## JOHN BELL *v.* N. T. TENNY AND ANOTHER.

The assignee of a senior mortgage received from the mortgagor a conveyance of the mortgaged property, in consideration of the sum due on the mortgage and an additional sum paid. *Held:*

That such conveyance did not, in equity, operate to merge or extinguish the mortgage, as between such assignee and a junior incumbrancer, it not appearing to have been the intention of said assignee that a merger should take place.

MOTION for leave to file a petition in error to the District Court of Brown county.

In April, 1873, the defendant, Tenny, commenced an action in the Common Pleas of Brown county against Jesse Gates and wife, mortgagors, to foreclose a mortgage. John Bell and A. N. Hirons were, on motion, let in to defend. Bell set up a mortgage on the premises and claimed priority, and from a decree against him, appealed to the district court, where the cause was tried on an agreed statement of facts, which, so far as it is necessary to recite them, are as follows :

On the 9th day of September, 1869, the defendants, Gates and wife, executed and delivered to one Thomas P. Vance a mortgage on ninety-six acres of land by them owned, and described in the petition of the plaintiff below, to secure the payment of three promissory notes of $433.33 each, with interest at 8 per cent., payable annually. The mortgage was properly recorded on the 30th day of October next following. These notes and mortgage were upon a valuable consideration assigned by Vance, the mortgagee, to Bell, the plaintiff in error, before due. On the 19th day of January, 1870, Gates and wife, the mortgagors, executed and delivered to Tenny a mortgage of the same premises, which is the one he is seeking to foreclose. This mortgage was duly recorded on the 24th of the same month. On the 3d day of January, 1871, Gates and wife conveyed twenty-eight acres, part of the ninety-six, to the defendant, A. N. Hirons, for the consideration of. $801, $700 of which was paid to and received by Bell, and applied upon his mortgage debt, in consideration of which payment he released his interest in the twenty-eight acres sold. In August, of the same year, Gates and wife executed and delivered to the defendant, Bell, a mortgage of the sixty-eight acres, residue of the ninety-six, deducting the twenty-eight acres sold to Hirons to secure the payment of $450 then loaned by Bell, and to be paid on the 1st day of March, 1872. This was the third mortgage covering the sixty-eight acres. In March, 1873, Bell purchased the sixty-eight acres of Gates and wife, and received a conveyance thereof by deed of general warranty, in consideration of the mortgage debt, and the additional sum of $100. At the time of this purchase, Bell had no knowledge, in fact, of the existence of Tenny's mortgage; nor had he surrendered to Gates the notes or mortgage; nor was the mortgage cancelled of record, although he, Bell, had agreed to surrender the same, and cause the mortgage to be cancelled.

Upon this state of facts, the district court found, as conclusions of law, that the plaintiff below, Tenny, had the

first lien on the sixty-eight acres of land, and that Bell had no lien thereon whatever by virtue of the Vance mortgage assigned to him, nor under the mortgage executed directly to him by Gates and wife; but that, by virtue of the conveyance to him by Gates and wife, he was entitled, upon satisfaction of Tenny's mortgage, to the residue of the fund arising from the sale of the sixty-eight acres.

*Loudon & Young* for the motion.
*White & Waters* contra.

BOYNTON, J. It is very apparent, from the conclusion reached in the district court, that its judgment was based upon the assumption that the conveyance by Gates and wife, the mortgagors, of their equity of redemption, to Bell, the assignee of the first mortgage, operated, *ipso facto*, to merge the mortgage, and extinguish the mortgage debt. The case, therefore, involves the question, whether a conveyance by the mortgagor of the mortgaged premises to the assignee of a senior mortgage, in consideration of the sum due on the mortgage, and a further sum paid, has the effect to extinguish the mortgage debt and the lien of the mortgage, as between such assignee and a junior incumbrancer. A merger is said to arise where a greater estate and a less coincide and meet in one and the same person, in one and the same right, without any intermediate estate. Whatever may be the rule at law, or whatever may be the rule as between the mortgagor and mortgagee, or as between the mortgagee and an innocent purchaser, it is well settled in equity that the conveyance of the mortgaged premises, by the mortgagor to the mortgagee, does not necessarily merge the mortgage nor extinguish the mortgage debt. The question generally depends upon the intention of the person in whom the two estates unite. If it is entirely indifferent to him whether the charge or incumbrance should be kept alive, a merger follows, as no beneficial purpose is to be subserved by keeping the two estates apart and subsisting. *James v.*

*Johnson,* 6 John. Ch. 424. He may, however, elect to merge or sink the charge in the conveyance, or he may elect to keep and continue it separate and distinct from the estate upon which it rests. Where the intent to merge or not to merge, is, with knowledge of the facts, expressly or unequivocally fixed and declared, the question is settled by such determination. But where there is no expressed intent, or the party is incapable of expressing any, the court looks into the circumstances, and implies an intent upon the part of the owner of the two interests to keep the charge or incumbrance subsisting, where its subsistence is beneficial to him, and where there are no equitable circumstances which ought to require its extinguishment. In *Forbes* v. *Moffatt,* 18 Ves. Jun. 390, the master of the rolls, Sir William Grant, in discussing this question, says : " Upon this subject, a court of equity is not guided by the rules of law. It will sometimes hold a charge extinguished where it would subsist at law, and sometimes preserve it where, at law, it would be merged. The question is upon the intention, actual or presumed, of the person in whom the interests are united." In *Myers* v. *Hewett,* 16 Ohio, 453, it is said : " The doctrine of merger never applies where it would work an injustice to the owner, or where his interest requires that these rights should have a separate existence." In *Corwin* v. *Collett's Ex'rs,* 16 Ohio St. 394, the same principle is asserted. It is there said, by Welch, J., that, " A leading feature of the law is, that merger will never be presumed against the equities of the parties. To work a merger, there must be an unequivocal act of the party to be affected by it, absolutely and irrevocably relinquishing the right to be merged." That this doctrine is quite universally received is shown by the following authorities : *Gardner* v. *Astor,* 3 John. Ch. 53 ; *Loomer* v. *Wheelwright,* 3 Sandf. Ch. 157 ; *James* v. *Morey,* 2 Cow. 246 ; *The New England Jewelry Co.* v. *Merriam,* 2 Allen, 390 ; *Clary* v. *Owen,* 15 Gray, 521 ; *Gregory* v. *Savage,* 32 Conn. 264 ; *Vanvice* v. *Bergen,* 16 Iowa, 562 ; *Bell* v. *Woodard,* 34 N. H. 90 ; *Stantons* v. *Thompson,* 49 N. H. 272 ; *Barker* v. *Flood,* 103 Mass.

474; *Edgerton* v. *Young,* 43 Ill. 464; 2 Wash. on Real Prop.
193.

Applying to the present case, the principle thus settled, it
follows that the district court erred in its disposition of the
same, unless a distinction is to be recognized in the princi-
ples that govern the rights of the mortgagee and those
that govern the rights of the assignee of the mortgage.
It does not appear that the assignment of the mortgage by
Vance to Bell was in such form as to carry the legal title
to Bell when the breach of the condition of the mortgage
supervened. It probably was not. But however the fact
may be, it is not necessary that the assignment should have
taken such form. If the legal title upon condition broken
vested in Vance, the mortgagee, he held it in trust for the
owner of the debt secured by the mortgage; and, in equity,
the rights of the assignee of the debt were precisely the same
as they would have been if clothed with the legal title. It
is, however, said that the court below followed *The Lessee
of Jennings* v. *Wood,* 20 Ohio, 261; and it is contended
that that case sustains its judgment. But it seems to
us that that case is clearly distinguishable in its prin-
cipal features from the present, and that we are not called
upon to affirm or disaffirm the principle therein asserted.
That was an action at law. This is an action in which the
equity powers of the court are properly invoked to prevent
an inequitable consequence from attaching to a lawful act.

The second mortgagee secured by his mortgage, upon its
execution and delivery to him, only the equity of redemp-
tion remaining in the mortgagor after the delivery of the
first mortgage. And the interest thus secured was not dis-
turbed by the conveyance to Bell; nor was his relation to
the mortgaged property at all injuriously affected by it.
No injustice is done to him in confining him to the interest
he acquired by his mortgage. Not to do so would be man-
ifest injustice to another. Bell was ignorant of the exist-
ence of the mortgage when he purchased the equity of re-
demption remaining in Gates; and in the absence of evi-
dence affirmatively showing that he intended, upon receiv-

ing the conveyance, to merge the two interests uniting in him, it will be implied that he did not so intend, it being so obviously to his advantage that such merger should not take place.

Motion granted; judgment reversed, and cause remanded.