**In re Larry O. FLUHARTY, Debtor.**

**Bankruptcy No. 579–1025.**

United States Bankruptcy Court,
N. D. Ohio.

Sept. 30, 1982.

Kathryn Belfance, Akron, Ohio, for debtor.

Jerome Holub, Akron, Ohio, standing chapter 13 trustee.

John L. Wolfe, Akron, Ohio, for Judith A. Fluharty.

## FINDING AS TO MOTION AND APPLICATION TO MODIFY PLAN

H. F. WHITE, Bankruptcy Judge.

Before this Court for decision are a Motion and Application filed by creditors, Judith A. Fluharty and her assignee, John L. Wolfe, Attorney. Said creditors have first requested this Court to find that a second mortgage owed by Debtor, Larry O. Fluharty, to Judith A. Fluharty and partially assigned to John L. Wolfe, be treated as a secured debt and that the Debtor's Plan be modified and amended so as to provide for payment of this debt.

These creditors have also moved for an order requiring Debtor to increase the amount of his payments under the Chapter 13 Plan. The matters came on for hearing on August 12, 1982. Both parties filed briefs in support of their respective positions herein.

### FACTS

1. (A) Judith A. Fluharty is the holder of a second mortgage on the real property known as 491 Orlando Avenue, Akron, Ohio in the amount of $3,500.00. Said mortgage was granted to Judith A. Fluharty in a divorce decree between herself and Debtor, Larry O. Fluharty. On April 19, 1979, said creditor assigned to John L. Wolfe, her right and interest in said mortgage to the extent of the sum of $2,909.57 with interest.

(B) The second mortgage to Judith A. Fluharty was due upon the happening of one of the following events:

"1. Five years from date;

2. Debtor remarries;

3. Debtor lives in the state of concubinage;

4. Debtor abandons the real estate as the principal residence of himself and the minor children; and/or

5. Debtor sells or transfers the real estate."

2. First National Bank holds a first mortgage against the real property, having filed a Proof of Claim in the amount of $12,534.17. As confirmed, Debtor's Plan proposes to continue making payments on this debt outside the Plan.

3. National City Bank is the holder of a third mortgage against the real property, said creditor having filed a Proof of Claim in this matter in the amount of $4,773.60. Said debt is to be paid inside the Plan.

4. On January 16, 1981, this Court overruled the objection of Judith A. Fluharty and John L. Wolfe to Debtor's Second Amended Plan. It was further found that the Plan as proposed should be confirmed. An Order confirming the Chapter 13 Plan was entered on February 26, 1981.

5. On January 21, 1981, Judith A. Fluharty and John L. Wolfe filed an appeal to the U. S. District Court for the Northern District of Ohio from this Court's Order dated January 16, 1981. Thereafter, Judith

A. Fluharty and Larry O. Fluharty entered into an Agreement wherein Larry O. Fluharty agreed to quit-claim the real property at 491 Orlando Avenue, Akron, Ohio to Judith A. Fluharty at such time as the appeal to the U. S. District Court, Case No. C81–194A, was dismissed.

6. The appeal was dismissed and the real property was deeded over to Judith A. Fluharty in April, 1981. The Debtor moved from the real estate and Judith A. Fluharty now occupies said house.

7. The Agreement referred to in Paragraph 5 of this Finding of Facts further provided that Judith A. Fluharty would pay the debt secured by a first mortgage to First National Bank and hold Debtor harmless thereon. Debtor agreed to pay the secured mortgage debt to National City Bank and hold Judith A. Fluharty harmless.

8. John L. Wolfe represented Judith A. Fluharty in the divorce proceedings between the parties. The partial assignment of the second mortgage to John L. Wolfe was in payment of attorney's fees to John Wolfe for services rendered in connection with said divorce case.

## ISSUES

The issues presented are:

1. whether Debtor may be required to amend his confirmed Plan so as to pay a higher percentage to creditors and

2. whether the Plan must be modified so as to provide for the payment of the second mortgage to Judith A. Fluharty and her assignee, John L. Wolfe.

## LAW

### I

In a motion filed July 27, 1982, Judith A. Fluharty and John L. Wolfe, on behalf of themselves and other unsecured and undersecured creditors, moved this Court to order Debtor to increase the amount of his payments under the Chapter 13 Plan. As cause, movants state that Debtor's earnings have increased from $23,000 a year, as set forth in his Schedules filed herein, to a sum in excess of $30,000 per year. As Debtor is presently paying only .053 cents on the dollar, movants urge that the payments into the Plan be increased.

Debtor in his responsive brief does not dispute that his income has increased since the time that the Petition in Bankruptcy was filed. Instead, he argues that it is Congress' intention that it be the Debtor, and not the creditors, who proposes a Chapter 13 Plan. It is further urged that any increased wages now earned by Debtor are necessary to support Debtor and his two minor children of whom he has custody.

This Court concurs with the arguments raised by Debtor. Accordingly, the motion to require increased payments must be denied.

Chapter 13 is intended to be entirely voluntary. H.R.No.95–595, 95th Cong., 1st Sess. at 120 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. A debtor may not be required to file Chapter 13, as it has been suggested that this may be in violation of the Thirteenth Amendment's prohibition against involuntary servitude. *Ibid.*

The exclusive right to file a Chapter 13 Plan is given to the debtor. 11 U.S.C. Section 1321; H.R.No.95–595, 95th Cong. 1st Sess. 123 (1977). As set forth in the Legislative History,

> Only the debtor knows his finances well enough and is sensitive enough to his primarily [SIC] obligation to support his family to know how much income he has available to pay his creditors, and thus to formulate a realistic plan. Creditors are not permitted to force a debtor into a plan that he does not accept for the same reason that creditors are not permitted to commence an involuntary case against the debtor in the first place. *Ibid.*

Under the Bankruptcy Reform Act, in order to confirm a Plan, a Debtor no longer must secure the consent of unsecured creditors to the Plan. H.R.No.95–595, *supra.* As the Legislative History notes, this requirement often forced a debtor to make an offer of full payment in order to obtain the requisite consents. Debtors unable to offer

full payment were forced to file liquidation proceedings. *Ibid.*

Under the Bankruptcy Code so long as the proposed Plan complies with the requirements of 11 U.S.C. Section 1325, the Bankruptcy Court must confirm the Plan. In this manner, Chapter 13 truly becomes a voluntary method of debt repayment. So long as the Plan complies with applicable law, the Debtor may fashion any Plan of repayment he chooses and the unsecured creditors must content themselves with the Plan as confirmed by the Court.

 Thus, it is evident that movants could not have required debtor to modify his Plan prior to confirmation. A creditor's ability to have a debtor amend his Plan prior to confirmation is limited in the respect that one may only raise those objections based on a debtor's failure to comply with bankruptcy law. If the Plan meets applicable law, including the requirements of 11 U.S.C. Section 1325, then the unsecured creditor cannot require a debtor to modify his Plan so as to require increased payment to unsecured creditors. The fact that the movants before this Court seek to require Debtor to modify his Plan post-confirmation does not change their inability to do so.

11 U.S.C. Section 1329 deals with the modification of a plan after confirmation. This section allows for modification in order to:

... (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim, other than under the plan.

With respect to this section, the Legislative History provides that "... the debtor may request a modification of the plan ..." H.R.No.95–595, 95th Cong. 1st Sess. 431 (1977), U.S.Code Cong. & Admin.News 1978, p. 6386. Neither the Bankruptcy Code nor the Legislative History indicate that a creditor may request modification of a Chapter 13 Plan. In light of the fact that a creditor may not initially propose a Chapter 13 Plan and is limited in his objections to a Chapter 13 Plan proposed by a debtor, this Court finds that had Congress intended that a creditor have the right to move for modification of a Chapter 13 Plan post-confirmation, it would have so stated expressly in the Code. In the absence of a clear expression that a creditor may move for a modification pursuant to 11 U.S.C. Section 1329, this Court holds that a creditor has no such ability. This Court therefore finds that the motion of Judith A. Fluharty and John L. Wolfe to modify the Plan and increase the payments thereunder should be denied.

## II

Movants' second application pending before this Court requests this Court to find that the second mortgage to Judith A. Fluharty has become due and payable by virtue of the transfer of the real property and that Debtor's Plan should be modified so as to provide for full payment of the second mortgage.

Paragraph 4 of the Judgment Order granting the parties a divorce provided that the note and mortgage in question were to become due and payable:

upon the happening of any one of the following events, whichever would occur first:

five (5) years from date;

if Plaintiff lives in the state of concubinage;

plaintiff remarries;

plaintiff no longer uses the property as the principal place of residence for himself and the minor children;

plaintiff sells or transfers said Real Estate.

Debtor is no longer using the real property as his or his children's principal place of residence as he has transferred the property by quit-claim deed to Judith A. Fluharty. As such, one of the specified events has taken place and the note and mortgage have become due and payable.

Debtor argues that by virtue of the fact that the real property in question has been transferred by its owner-mortgagor, Larry O. Fluharty, to the mortgagee, Judith A. Fluharty, that the mortgage and note have become merged into the real property. If merged, there is no debt which is due so as to require payment under the Chapter 13 Plan.

Movants point to two exceptions to the doctrine which, they urge, apply herein. Firstly, it is argued that the doctrine does not apply to the extent that Judith Fluharty's interest, right, and title in the second mortgage has been assigned to John L. Wolfe. Secondly, movants contend that the intervening claim of National City Bank bars the application of the doctrine.

In the instant case, the second mortgage was granted to Judith A. Fluharty by the Summit County Common Pleas Court, Domestic Relations Division, in order to provide Mrs. Fluharty with her share of the equity in the real property. As noted in movant's brief, in order to financially protect and assist Debtor who had been granted custody of the parties' minor children, Debtor was not required to pay to Mrs. Fluharty her share of the equity immediately upon the divorce but instead the note and mortgage were executed.

The doctrine of merger provides that the acquisition of mortgaged land and the mortgage debt by one person results in the discharge of the debt and the extinguishment of the mortgage lien. 5 Tiffany, *The Law of Real Property,* Section 1479, (3d ed. 1939). The theory behind this doctrine is that:

> the person owning and controlling the debt can usually have no object in keeping it alive, it being in substance a claim against his own property, and he may consequently be presumed to intend that the debt shall be extinguished... 5 Tiffany, *supra.* at Section 1480.

It is essential to remember, that as this doctrine is presently applied, the doctrine of merger is governed by equitable principles. 37 Ohio Jur.2d, *Mortgages,* Section 224 (1959).

When viewing the transfer herein without reference to the issues regarding the assignment of the debt and the intervening claim of National City Bank, it can be seen that a merger did occur. One of the controlling factors in determining if a merger has taken place is whether a merger was intended to take place. *Bell v. Tenny,* 29 Ohio St. 240 (1876); 37 Ohio Jur.2d, *Mortgages* Section 225 (1959). The crucial intent is that of the mortgagee at the time that the transfer takes place. 4 *American Law of Property,* Section 16.143 (A. Casner ed. 1952). Where no expressed intention at the time of the transfer is shown, whether an intent to have a merger exists must be determined from the surrounding circumstances. *Id.*

In the instant case, several factors point to an intention to merge and extinguish the mortgage debt on the part of Judith A. Fluharty. As noted, the second mortgage was granted to Mrs. Fluharty so as to allow her a proportionate share of the equity in the real property at the time of the divorce. That proportionate share of the equity was fixed at the sum of $3,500.00 by the Domestic Relations Court.

To recognize the continuance of this mortgage, however, would result in Judith Fluharty receiving substantially more than the sum of $3,500.00 initially, due to the fact that the second mortgage has become due and payable due to the transfer of the real property into Mrs. Fluharty's name. Under movant's argument, Debtor would be required to immediately, or at least within the balance of the Plan, pay to Judith A. Fluharty and/or her assignee, John L. Wolfe, the sum of $3,500.00 in satisfaction of the second mortgage. Despite this payment, Judith Fluharty would retain possession of and title to the real property. Thus, at such time as Judith Fluharty should sell the house, she would receive any sums realized over and above the amount of the first mortgage to First National Bank. This Court has previously found that the fair market value of the real property is approx-

imately $20,000 [1]. The first mortgage has an approximate balance owing of $12,000. Upon sale, the net proceeds to Judith Fluharty could be as high as $8,000. Accepting movant's argument would result in movant receiving the sum of $11,500.00 as well as possession of and title to the house for so long as she chooses not to sell despite the fact that her share in the house was found at the time of her divorce from Debtor to be the sum of $3,500.00.

This Court finds that the parties did not intend such an unjust enrichment of movant to occur by virtue of the transfer of the real property into Judith A. Fluharty's name. No provision for payment of this second mortgage was set forth in the Agreement between Judith and Larry Fluharty, despite the fact that said Agreement specifically stated which party was to assume the first and the third mortgages. The Court finds that this is a further indication that the second mortgage was not intended to survive the transfer of the real property into Mrs. Fluharty's name.

Movants argue, however, that the intervening claim of National City Bank and the partial assignment of the mortgage to John L. Wolfe bar any merger. This Court cannot concur in this argument.

■ Where merger is not recognized because of an intervening claim, it is to protect the mortgagee from the intervening claim or lien. *Giovannoni v. The Corryville Building & Savings Co.,* 3 Ohio Supp. 264, 11 Ohio Op. 100 (Hamilton Cty.C.P.1938). In this case, the intervening claim is held by National City Bank, the holder of a third mortgage against the subject real property. Debtor's Chapter 13 Plan provides for payment of this claim.[2] Further, Debtor is required to hold Judith A. Fluharty harmless against this debt. As such, the intervening claim does not prejudice the rights of Mrs. Fluharty.

Even if a foreclosure action were to be filed by National City Bank, Judith A. Fluharty and John L. Wolfe would be able to recover the full sum of $3,500.00 granted Judith A. Fluharty in the note and second mortgage. After payment of the first and third mortgages and taking into consideration the costs associated with a foreclosure, there would still remain at least the sum of $3,500.00. Furthermore, to the extent that funds from a foreclosure were used to satisfy the claim of National City Bank, Mrs. Fluharty could then proceed against the Debtor on the basis of the hold harmless clause contained in the Agreement dated April 16, 1981. As no harm can come to the movants through National City Bank's claim, this Court will not adopt movant's argument that said claim bars merger.

■ Merger is also not barred by the partial assignment of the second mortgage to John L. Wolfe. It has been stated that a merger will not be prevented where its prevention would promote fraud or effect a wrong. *Waitman v. Emmons,* 76 Ohio App. 212, 31 Ohio Op. 502, 61 N.E. 912 (Montgomery Cty.C.A.1945). Nor will the "stringent" rules regarding merger be applied, "where the equities of the parties can be better subserved by holding that there has been a merger". *Corwin v. Collett's Executors,* 16 Ohio St. 289 (1865).

The equities of this case will be substantially better served by holding that there has been a merger. Judith A. Fluharty will be unjustly enriched in the event that no merger is effected. In addition to title and possession of the real property, the failure to merge the debt into the real property may result in Mrs. Fluharty receiving as much as $11,000.00 through payment of the second mortgage and any sale of the premises, when it has previously been held by

---

1. See Finding of Fact No. 7 to a Finding and Order as to Objection to Confirmation and Avoidance of Judicial Liens dated December 10, 1981. Said objection was also filed by Judith A. Fluharty and John L. Wolfe.

2. The Court has been informed by the Standing Chapter 13 Trustee's office that Debtor is cur-

rent on his payments into the Plan and that, at present, there is slightly over $1,000.00 due National City Bank. This represents a substantial reduction in National City Bank's claim as its Proof of Claim was filed in the amount of $4,773.60.

the State Court that her share of the equity in this real property was no more than the sum of $3,500.00.

Moreover, John L. Wolfe, as Mrs. Fluharty's attorney, has been fully aware of all that has gone on in both the divorce case and this case. Mr. Wolfe represented Mrs. Fluharty in the divorce action and was thereby made aware of the disposition of property in that case. Further, he was a witness to the Agreement dated April 16, 1981 wherein Debtor agreed to quit-claim the real property to Mrs. Fluharty. Mr. Wolfe no doubt also played a part in the drafting of that Agreement, at least to the extent of advising his client, Mrs. Fluharty, whether or not she should sign the same. Had it been the parties' intent not to effectuate a merger through that Agreement, and in light of his own financial interests in the second mortgage, Mr. Wolfe could have had a clause placed in that Agreement indicating that no merger was intended.

This Court finds that the equities of this case are better served by holding that a merger was had at the time that the real property was transferred to Judith A. Fluharty by quit-claim deed. As such, there is no note and mortgage which need to be paid through the Chapter 13 Plan and movant's application must be denied.

Therefore, it is the conclusion of this Court that the Motion to require Debtor to modify his Chapter 13 so as to allow increased payments to the unsecured creditors must be denied. It is the further conclusion of this Court that the application of Judith A. Fluharty and John L. Wolfe to have second mortgage treated as a secured debt should be denied.