**THORP CONSUMER DISCOUNT COMPANY, d.b.a. ITT Financial Services, Commercial Division, Appellant,**

v.

**HARTIGAN et al., Appellees.**

[Cite as *Thorp Consumer Discount Co. v. Hartigan* (1996), 114 Ohio App.3d 424.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15728.

Decided Sept. 27, 1996.

*James M. Schmidt*, for appellant.

*John Slavens*, for appellees.

F<small>AIN</small>, Judge.

Plaintiff-appellant Thorp Consumer Discount Company, d.b.a. ITT Financial Services, Commercial Division ("ITT"), appeals from a judgment of the trial court adopting a magistrate's decision to dismiss ITT's complaint for foreclosure of its senior mortgage. ITT contends that the trial court erred by finding that ITT's acceptance of a quitclaim deed executed by the mortgagor merged its mortgage interest in the property with its interest as titleholder, thereby extinguishing the mortgage lien. ITT maintains that the record is devoid of any unequivocal act indicating its intent to merge its interests in the property. Further, ITT claims that the trial court failed, as a matter of law, to infer that ITT intended not to merge its interests in the property in the presence of subordinate lienholders whose liens far outweighed the market value of the property.

We conclude that, as a matter of law, ITT did not intend to merge its interests in the property when it accepted a quitclaim deed from the mortgagor and listed the mortgaged property with a real estate broker for sale. Accordingly, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Plaintiff-appellant Thorp Consumer Discount Company is a Pennsylvania corporation licensed to conduct business in Ohio as ITT Financial Services, Commercial Division. On August 18, 1988, David W. Hartigan executed a promissory note and security agreement in favor of ITT in the principal amount of $60,828.28 for the purchase of real property located at 2 Mark Twain Court, Kettering, Ohio. Hartigan also executed a mortgage as collateral for the promissory note, which was duly recorded in Montgomery County, Ohio, on August 19, 1988. The terms of the promissory note and security agreement set forth events constituting default, including the failure to pay any installment when due and the initiation of

any proceeding in bankruptcy, receivership, or insolvency started by or against Hartigan. Upon Hartigan's default, ITT could avail itself of several remedies including acceleration of the unpaid balance of the note, action to peaceably repossess the property, and foreclosure proceedings.

On October 25, 1988, Hartigan made his last payment on the promissory note and subsequently went into default. From October 1988 through January 1989, various mechanics' and judgment liens, totaling more than $98,000, were filed against the 2 Mark Twain Court property. On August 21, 1990, ITT obtained a title report on the property showing the various liens on the property.

On January 16, 1991, Hartigan filed a petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Ohio, Western Division, case No. 3–91–00213. Hartigan also filed pleadings indicating his intent to abandon the 2 Mark Twain Court property. On March 19, 1991, the bankruptcy trustee filed a report verifying a no-asset bankruptcy estate.

On March 21, 1991, the bankruptcy trustee held a Section 341 hearing for Hartigan's creditors. During the hearing, a paralegal representing ITT approached Hartigan and asked him to execute a quitclaim deed, prepared by ITT's attorney, conveying the 2 Mark Twain Court property to ITT. Hartigan later testified that the paralegal told him that after he executed the deed he could "walk away" from it, which he interpreted as meaning that his obligations under the promissory note would be extinguished. ITT later testified that it obtained the quitclaim deed from Hartigan so that it could regain possession of the property. The quitclaim deed was recorded in Montgomery County, Ohio, on April 11, 1991.

On April 12, 1991, ITT prepared an internal form regarding the status of the 2 Mark Twain Court property. The form indicated that there were no senior liens on the property and that ITT held marketable title. Further, the form contained the following handwritten comment:

"Customer filed Bankruptcy Chapter 7 but Quit Claim Deeded to us. We filed Quit Claim Deed and are currently putting property up for sale."

The internal ITT form also indicated that the 2 Mark Twain Court property was listed with Ray Rotellini Realty. The property was appraised at approximately $75,000.

On April 15, 1991, ITT obtained another title report on the 2 Mark Twain Court property. The title report indicated that there were two liens senior to ITT's mortgage, although later testimony by ITT questioned the validity of those

liens.[1] The title report also indicated the various mechanics' and judgment liens recorded after ITT's mortgage.

On May 14, 1991, Hartigan was discharged from bankruptcy and released from all of his dischargeable debts.[2]

On March 21, 1994, ITT filed a foreclosure action naming the various lienholders as defendants, including defendant-appellee National City Bank as successor in interest to Gem Savings Association. The trial court referred the matter to a magistrate, and a trial was set for August 28, 1995. On November 11, 1995, the magistrate issued her decision dismissing ITT's complaint for foreclosure. ITT filed objections to the magistrate's decision, but, on January 3, 1996, the trial court, after independent review of the record, overruled ITT's objections and adopted the magistrate's decision.

From the judgment of the trial court, ITT appeals.

ITT's first assignment of error is as follows:

"The trial court erred to the prejudice of appellant when it held as a matter of law that appellant's acceptance and recording of the deed to the subject real estate [were] an unequivocal act indicating appellant's intent to merge the mortgage into the deed and relinquish appellant's mortgage lien."

In its first assignment of error, ITT contends that the circumstances surrounding its acceptance and subsequent recording of a quitclaim deed from Hartigan did not evidence its intent to merge its mortgage interest in the 2 Mark Twain Court property with its superior interest as legal titleholder of the property. ITT argues that the trial court failed to recognize the legal presumption that a mortgagee does not intend to merge its interests in mortgaged property in the presence of third–party lienholders. ITT also argues that the record is notably devoid of any direct unequivocal act showing its intent to merge its interests. Finally, ITT maintains that a merger of its interests in the 2 Mark Twain Court property would result in the unjust enrichment of National City Bank and the other defendants in that their liens would enjoy a greater priority than if ITT had never accepted the quitclaim deed from Hartigan. In sum, ITT contends that the

---

1. During the trial, Roger W. Rizer, Vice President of Foreclosures and Liquidation for ITT, testified that although the title report indicated two senior liens, those liens were discharged by payment out of the loan proceeds from Hartigan's purchase of the 2 Mark Twain Court property in August 1988. Rizer claims that the two liens were itemized for payment in the promissory note and security agreement and were subsequently discharged by payment at closing.

2. Rizer later testified at trial that ITT considered Hartigan's personal liability under the promissory note to be extinguished by the bankruptcy proceedings.

equitable nature of the merger doctrine precludes its application to the circumstances in this case.

In contrast, National City Bank argues that the statement by ITT's representative at the bankruptcy hearing—that Hartigan could "walk away" after executing a quitclaim deed in favor of ITT—indicated ITT's intent to relinquish its mortgage lien in the 2 Mark Twain Court property. National City Bank also argues that ITT's plan to sell the property was further evidence that ITT's mortgage lien had merged with its superior interest in the legal title to the property. In short, National City Bank maintains that the record supports the trial court's conclusion that ITT intended to merge its interests in the 2 Mark Twain Court property when it accepted the quitclaim deed from Hartigan.

The magistrate found that ITT's acceptance and recording of the deed were an unequivocal act indicating its intent to merge its interests in the property. The trial court, in adopting the magistrate's decision, also found that, with respect to intent, ITT failed to present any evidence to contradict the statement made by ITT's representative at the bankruptcy hearing. Both the magistrate and the trial court, after independently reviewing the record, concluded that ITT relinquished its mortgage interest in the property when it accepted the quitclaim deed from Hartigan.

Both parties agree that the proposition of law at issue in this case is set forth in *Bell v. Tenny* (1876), 29 Ohio St. 240. In *Bell,* the assignee of a senior mortgage accepted a conveyance of the mortgaged property from the mortgagor without knowledge of a subordinate mortgage held by a third party. Upon discovery of the junior encumbrancer, the assignee of the senior mortgage initiated foreclosure proceedings. The junior encumbrancer claimed that the assignee's senior mortgage merged with the assignee's interest as legal titleholder upon the conveyance of the property. The Supreme Court of Ohio held that the mere conveyance of legal title by the mortgagor to the mortgagee did not necessarily merge the mortgagee's interests in the property. In its discussion, the court described the doctrine of merger as follows:

"A merger is said to arise where a greater estate and a lesser coincide and meet in one and the same person, in one and the same right, without any intermediate estate. Whatever may be the rule at law, or whatever may be the rule as between the mortgagor and mortgagee, or as between the mortgagee and an innocent purchaser, it is well-settled in equity that the conveyance of the mortgaged premises, by the mortgagor to the mortgagee, does not necessarily merge the mortgage nor extinguish the mortgage debt. The question generally depends upon the intention of the person in whom the two estates unite." *Id.* at 242.

With respect to intent, the court further explained that "[w]here the intent to merge or not to merge, is, with knowledge of the facts, expressly or unequivocally fixed and declared, the question is settled by such determination. But where there is no expressed intent, or the party is incapable of expressing any, the court looks into the circumstances, and implies an intent upon the part of the owner of the two interests to keep the charge or incumbrance subsisting, where its subsistence is beneficial to him, and where there are no equitable circumstances which ought to require its extinguishment." *Id.* at 243.

Since *Bell*, Ohio courts have strictly construed the merger doctrine. At least eight Ohio courts have considered the merger doctrine under circumstances similar to *Bell*, that is, where a mortgagor conveyed the mortgaged property to a senior mortgagee. *Senter v. Senter* (1913), 87 Ohio St. 377, 101 N.E. 272; *BancOhio Natl. Bank v. Sargent* (Mar. 10, 1986), Scioto App. No. 1544, unreported, 1986 WL 2996; *Waitman v. Emmons* (1945), 76 Ohio App. 212, 31 O.O. 502, 61 N.E.2d 912; *Marshall v. Ebling* (1942), 70 Ohio App. 145, 24 O.O. 477, 45 N.E.2d 318; *People's State Bank of Wauseon v. First Natl. Bank of Napoleon* (1931), 40 Ohio App. 374, 178 N.E. 702; *Eythe v. Commercial Bank & Sav. Co.* (1930), 40 Ohio App. 150, 178 N.E. 425; *Case v. Golnar* (1928), 33 Ohio App. 389, 169 N.E. 724; *Giovannoni v. Corryville Bldg. & Sav. Co.* (C.P.1938), 26 Ohio Law Abs. 351. In only one case has a court applied the merger doctrine to hold that the owner's lesser interest as mortgagee merged with her superior interest as legal titleholder to the property. *Senter*, 87 Ohio St. 377, 101 N.E. 272, paragraph two of the syllabus. In that case, the Supreme Court of Ohio held that the mortgagee's interests had merged when she reconveyed the mortgaged property to the original mortgagor, while simultaneously executing a release and satisfaction of her mortgage on the property, after receiving the advice of her attorney that the transaction would result in a merger of her interests. In sum, absent the unequivocal intent expressed by the mortgagee in *Senter*, Ohio courts have been reluctant to apply the merger doctrine to extinguish a mortgage lien.

One reason for the strict application of the merger principle is the equitable nature of the doctrine itself. We have previously observed that " '[w]hether a merger will be recognized in equity depends upon the interests of the parties and the surrounding circumstances. If there are outstanding liens against which it becomes necessary to protect the title, a merger will not occur.' " *Waitman*, 76 Ohio App. at 218, 31 O.O. at 505, 61 N.E.2d at 915, quoting *Summy v. Ramsey* (1909), 53 Wash. 93, 99, 101 P. 506, 508.

The interests of the mortgagee determine whether a court will infer intent on the part of the mortgagee to merge its property interests. See *Myers v. Hewitt* (1847), 16 Ohio 449, 453 ("The doctrine of merger never applies when it would work an injury to the owner, or where his interest requires that these

rights should have a separate existence."); *People's State Bank of Wauseon,* 40 Ohio App. at 376, 178 N.E. at 703 ("In view of all the evidence, we can find no intent on the part of the plaintiff to merge the mortgages with the title to the real estate when it was to the manifest interest of the plaintiff to keep the mortgages alive."); *Case,* 33 Ohio App. at 392, 169 N.E. at 725 ("Since it was to the interest of Mrs. Golnar that the mortgage lien should continue to subsist, and there was no evidence to the contrary, it will be presumed that such was her intention."). Rarely will the interests of the senior mortgagee be served by a merger of its mortgage with its legal title where third persons hold substantial liens on the mortgaged property. See *Bell,* 29 Ohio St. at 244–245; *Waitman,* 76 Ohio App. at 219, 31 O.O. at 505, 61 N.E.2d at 915; *Marshall,* 70 Ohio App. at 153–154, 24 O.O. at 481, 45 N.E.2d at 322–323. Consequently, equitable principles often persuade courts to forgo application of the merger doctrine, even where the actions by the mortgagee might suggest otherwise. See *BancOhio Natl. Bank, supra,* Scioto App. No. 1544, unreported.[3]

Having reviewed the principles at issue, we now turn to the facts upon which ITT bases its appeal.

 National City Bank contends that ITT's plan to convey the mortgaged property by listing the property with a real estate broker evidenced its intent to merge its interest as mortgagee with its interest as legal titleholder. We disagree. Pursuant to *Bell,* the mere acquisition of legal title by ITT did not necessarily merge its interests in the 2 Mark Twain Court property. See 29 Ohio St. at 242. As the legal titleholder of the property, ITT may take preliminary steps to sell the property without conclusively merging its interests. See *People's State Bank of Wauseon,* 40 Ohio App. at 374–375, 178 N.E. at 702–703. Although an actual conveyance by ITT to a bona fide purchaser might have resulted in a merger, listing the property with a real estate broker for possible sale was not an act that extinguished ITT's mortgage.

With respect to the statement by ITT's representative at the bankruptcy hearing that Hartigan could "walk away" from his obligations after executing the quitclaim deed in favor of ITT—we conclude that this statement was, at best,

---

**3.** In *BancOhio Natl. Bank,* the senior mortgagee, already having received the mortgaged property from the mortgagor, conveyed the property by general warranty deed to a third party, who also held a subordinate judgment lien on the property. The court of appeals held that the senior mortgagee's conveyance of the mortgaged property to a third party by general warranty deed did not result in a merger of its mortgage lien with its legal title. Although we need not address this issue in the case before us, we question that court's reasoning on the matter and, instead, find merit in the proposition that a holder of a mortgage lien who acquires title to the mortgaged property and subsequently conveys it with full covenants to a bona fide purchaser, absent an agreement to the contrary, extinguishes his mortgage interest in the property. See *Waitman,* 76 Ohio App. at 219, 31 O.O. at 505, 61 N.E.2d at 915.

ambiguous as to ITT's intent to merge its interests in the property. At most, the paralegal merely stated the inevitable, since the bankruptcy proceeding itself would result in the discharge of Hartigan's personal obligation under the promissory note. Even a more explicit statement by the paralegal indicating ITT's intent to relinquish its mortgage lien[4] in return for Hartigan's legal title might not be sufficient equitably to find that ITT merged its interests in the 2 Mark Twain Court property. Cf. *Marshall*, 70 Ohio App. at 152, 24 O.O. at 480–481, 45 N.E.2d at 322; *Eythe*, 40 Ohio App. at 152, 178 N.E. at 425–426 (refusing to apply the merger doctrine even after finding that the mortgagee unquestionably intended to accept the real estate in satisfaction of its senior mortgage). Accordingly, we cannot find as a matter of law that ITT unequivocally intended to merge its interests in the 2 Mark Twain Court property.

■■ Not only is the record notably devoid of an unequivocal statement of intent by ITT to merge its interests, but the equitable nature of the merger doctrine prevents us from inferring that intent. Both parties maintain in their appellate briefs that ITT did not have actual knowledge of the liens on the property when it accepted the quitclaim deed from Hartigan. The magistrate suggested in her report that ITT had actual knowledge of the junior liens based upon the August 21, 1990 title report, but was unaware of the two senior liens that were also set forth in the April 15, 1991 title report. Even if we impute to ITT actual knowledge of all of the liens filed against the 2 Mark Twain Court property prior to August 21, 1990, we cannot infer that the acceptance of a quitclaim deed from Hartigan, combined with actual knowledge of the liens on the property, evidenced ITT's intent to merge its interests in the property.

Pursuant to *Bell*, we must infer, as a matter of law, that ITT intended to preserve its senior mortgage lien in the property as long as it was beneficial to ITT and as long as there were no equitable circumstances that required extinguishment of the senior mortgage. See 29 Ohio St. at 243. It is undisputed that the market value of the 2 Mark Twain Court property was far outweighed by the outstanding liens on the property. Further, recognizing ITT's senior mortgage lien would not unduly prejudice National City Bank because National City Bank would be in no worse position as a result of ITT having accepted the quitclaim deed from Hartigan. Cf. *Marshall*, 70 Ohio App. at 154, 24 O.O. at 481, 45 N.E.2d at 323. Extinguishing ITT's senior mortgage, however, would result in a windfall to all of the subordinate lienholders, including National City Bank, because to do so would provide them with an increase in the priority of their liens

---

4. Since Hartigan was deeding away his only interest in the property, ITT's retention of its mortgage lien was in no way inconsistent with its paralegal's statement that Hartigan could "walk away." At most, this statement evinced ITT's renunciation of any intent to seek a recovery against Hartigan on his promissory note.

beyond any justified expectations. In short, we cannot find any equitable circumstances on behalf of the junior lienholders to offset the disproportionate consequences that would result from the application of the merger doctrine in this case.

ITT's first assignment of error is sustained.

ITT's second assignment of error is as follows:

"The trial court's judgment was against the manifest weight of the evidence."

In light of our disposition of ITT's first assignment of error, we need not address ITT's second assignment of error.

ITT's first assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GRADY and FREDERICK N. YOUNG, JJ., concur.