**LAND HOLDINGS (ST. THOMAS) LTD., Plaintiff**

**v.**

**MEGA HOLDINGS, INC., KATHY MULLEN D/B/A REGENCY CHARTER**

**SERVICES, INC., and AQUAMARINE TOURS, INC.,**
**Defendants**

Civ. No. 1998-078

District Court of the Virgin Islands

Div. of St. Thomas and St. John

November 8, 1999

474

■■■■■■■■■■■■■■■■

JOEL H. HOLT, ESQ., Holt & Russell, St. Croix, U.S.V.I., *for plaintiffs*

KEVIN A. RAMES, ESQ., St. Croix, U.S.V.I., *for Mega Holdings, Inc., defendants*

FREDERICK G. WATTS, ESQ., Watts & Benham, St. Thomas, U.S.V.I., *for Kathy Mullen, Aquamarine Tours, Inc., defendants*

MOORE, *District Judge*

### MEMORANDUM

This matter is before the Court on Aquamarine Tours, Inc. ["Aquamarine" or "defendant"] and Kathy Mullen d/b/a Regency Charter Services, Inc.'s ["Mullen" or "defendant"] motions to dismiss and Land Holdings (St. Thomas) Ltd.'s ["Land Holdings" or "plaintiff"] cross-motion for summary judgment. For the reasons set forth below, the Court will deny both defendants' motions to dismiss and grant plaintiff's cross-motion for summary judgment.

### I. FACTS

On July 28, 1986, Virgin Islands Yacht Harbor, Incorporated ["VIYH"] executed a loan agreement with the Bank of Nova Scotia ["Bank" or "BNS"] for $ 7,000,000 and VIYH executed and delivered its promissory note and a duly recorded first priority mortgage on its land and improvements at "Parcel No. 4 Estate Thomas, King's Quarter (formerly No. 6G New Quarter) St. Thomas, U.S.

Virgin Islands," (Complaint Ex. 1.),[1] as security for repayment of this obligation. By mutual agreement, additional promissory notes raised the debt obligation to $15,635,000 ["Note"] by April of 1996, secured by duly recorded mortgage modification agreements ["Mortgage"]. The real property at issue and subject to the Mortgage is a subdivision of Parcel No. 4 containing the improvements in which the defendants claim an interest, namely, "Parcels Nos. 4 and 4C Estate Thomas" "Property"].

When VIYH defaulted on the Note and Mortgage, it negotiated a Deed in Lieu of Foreclosure Agreement and Property Transfer Agreement ["Deed in Lieu Agreement"] with BNS pursuant to which VIYH conveyed its interest in the Property by a deed in lieu of foreclosure dated April 9, 1997, to Yacht Haven Holdings, Inc. ["YHH"], a separate legal entity created by BNS as its nominee. (*See* Aquamarine Mot. to Dismiss Ex. E (Deed in Lieu Agreement); *see also* Complaint Ex. 5 (Deed in Lieu of Foreclosure).)[2] The Deed in Lieu Agreement recited that VIYH's transfer of the Property to YHH would constitute VIYH's "complete satisfaction of the Indebtedness and other obligations under the Loan Agreement on the terms and conditions set forth" in the Deed in Lieu Agreement and that BNS would forever release and discharge VIYH of any and all claims, debts, and causes of action BNS ever had against VIYH. (Aquamarine Mot. to Dismiss Ex. E. at 2, 3; repeated in Surreply Ex. M at 2, 3.) In its general release executed a few days later on April 15, 1997, VIYH recited that BNS "has previously assigned its interests to YHH under the Mortgage, Loan Agreement, UCC Interest and otherwise in this matter" and that VIYH intended the deed in lieu to YHH to satisfy its obligations under the loan agreement with BNS. (Surreply Ex. N, at 2.)

On January 6, 1998, in exchange for the recited consideration of $ 3,380,999, BNS assigned the Mortgage on the Property to Land Holdings by a duly recorded assignment of first priority Mortgage

---

[1] Since Land Holdings attached exhibits only to its original complaint, and not its amended complaints, the Court will refer to the original complaint when citing to exhibits.

[2] By the same agreement, VIYH also deeded to YHH its interest in land which was not subject to the Mortgage, namely, an undivided three quarter interest, as tenant-in-common, in "Parcel Nos. 4D, 4E, and 5B, Estate Thomas, Kings Quarter (formerly No. 6G New Quarter), St. Thomas, United States Virgin Islands."

containing the representation that it was a "valid first priority lien" on the Property. (Opposition to Mot. to Dismiss Ex. D, at 2.) On even date, YHH quitclaimed its fee title to the Property to Mega Holdings for the stated consideration of one dollar. (Surreply Ex. P.) These transfers are but a part of a complicated transaction by which BNS sold and divested itself of all interests accumulated in its dealings with VIYH, as shown in the integration agreement provided by Aquamarine. (See Surreply Ex. N, at 2.)[3]

Mega Holdings subsequently defaulted on the Mortgage now held by Land Holdings and secured by the Property. On or about February 24, 1998, Land Holdings notified Mega Holdings that the Note and related loan documents were accelerated due to the latter's continued default. (Second Am. Compl. ¶ 35.) Land Holdings demanded that Mega Holdings pay the entire principal balance and all accrued and unpaid interest, as well as other amounts due including attorneys' fees and costs. As of February 28, 1998, Mega Holdings was indebted to Land Holdings in the principal amount of $12,005,567.00, plus accrued and unpaid interest of $ 2,303,331.45 through April 14, 1998, the date plaintiff filed its complaint.

Due to the default, Land Holdings sued Mega Holdings for: (1) an adjudication that Land Holdings possesses a valid first priority lien on the Property which is superior to all other interests; (2) a decree that the Property be sold at public sale to satisfy the outstanding principal and interest owing; (3) a judgment foreclosing Land Holdings' mortgage on the Property and that such foreclosure extinguish any right, title, interest, or lien claimed by any other party; and (4) a judgment requiring all parties in possession of the Property to vacate and surrender the premises

---

[3] The Integrated Agreement, dated January 6, 1998, executed by BNS as assignor, Land Holdings as assignee, YHH as seller, and Safe Haven Marina, Inc., Safe Haven Development, Inc., Equity Holdings, Inc., and Mega Holdings as buyers, accurately describes the integrated transaction, except for misidentifying Safe Haven Development as the buyer of the Property, which Aquamarine recognizes as an error. (*See* Surreply at 6.) Thus, BNS assigned the Mortgage on the Property to Land Holdings, (*see* Complaint Ex. 4; Surreply Ex. P); YHH sold to Equity Holdings, Inc., a 70% undivided interest and to Safe Haven Development, Inc., its remaining 5% undivided interest in Parcels Nos. 4D, 4E, and 5B for $ 1,360,000 and $ 90,000 respectively, (*id.*); and YHH sold Safe Haven Marina, Inc. all its interest "in and to the Marina and its facilities located seaward of Parcels 4 and 4C of Estate Thomas" for 175,000, (*Id.*).

and Property to the purchasers at the judicial sale. (Second Am. Compl. 9-10.)

## II. DISCUSSION

Land Holdings initially sued twenty-one named parties, as well as "any and all persons or corporations claiming an interest of any kind or nature whatsoever in" the Property. After many notices of dismissal and two stipulations for dismissal, only Mega Holdings and the defendants, Aquamarine Tours, Inc., and Kathy Mullen d/b/a Regency Charter Services, remain.

Aquamarine and Mullen[4] each filed motions to dismiss Land Holdings' Complaint on several procedural and substantive grounds. Land Holdings' opposed these motions and filed its cross-motion for summary judgment. Mega Holdings has filed no motions.

### A. Standard of Review

Federal Rule of Civil Procedure 12(b) provides that "if, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *See also In re Tutu Wells Contamination Litig.*, 38 V.I. 275, 994 F. Supp. 638, 656 (D.V.I. 1998); 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE (CIVIL) 2D § 1366, at 493 ("Once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment.").

Plaintiff and defendants all have submitted numerous exhibits and affidavits outside of the pleadings. Thus, all parties have had adequate notice of the likelihood that the matter would be decided on a summary judgment standard given Land Holdings' counter motion for summary judgment and ample opportunity to submit materials in support of their respective positions. *See Hilfirty v. Shipman*, 91 F.3d 573, 578 (3d Cir. 1996) (citing *Rose v. Bartle*, 871

---

[4] Mullen has adopted Aquamarine's legal position set forth in Aquamarine's Motion to Dismiss. (*See* Mullen's Mot. to Dismiss at 2.)

F.2d 331, 342 (3d Cir. 1989)). Indeed, Aquamarine has conceded that "the attachment of documents outside the pleadings to the Defendant's Motion to Dismiss subjects the motion to a summary judgment standard." (Aquamarine's Reply to Pl.'s Opp'n to Defendant.'s Mot. to Dismiss ["Aquamarine's Reply"] at 2.) Accordingly, the Court will treat the defendants' motions to dismiss as motions for summary judgment.

## B. Defendants' Procedural Arguments

Defendants argue that Land Holdings' claim is barred on numerous procedural grounds. These grounds include: Land Holdings has collusively manufactured federal jurisdiction in violation of 28 U.S.C. § 1359; Land Holdings has failed to comply with the requirements of 14 V.I.C. § 611 and therefore cannot maintain an action in this Court; and Land Holdings does not have a bona fide claim against Mega Holdings and therefore this Court cannot exercise supplemental jurisdiction under 28 U.S.C. § 1367 to reach Land Holdings' claims against Aquamarine and Mullen.

■ ■ The Court finds none of these procedural arguments compelling or persuasive. BNS made a business decision to relieve itself of the burden of the Mortgage encumbering the Property, which included assigning its interest to Land Holdings for valid consideration. This evidences no collusive intent or behavior by either BNS or Land Holdings. The Court further finds that plaintiff has complied with the corporate registration requirements of 13 V.I.C. § 401(a), (see Land Holdings' Opp'n to Mot. to Dismiss at 6-7), which brought it into substantial compliance with the intent of 14 V.I.C. § 611(a). Land Holdings therefore may maintain this action. Finally, the Court finds no merit to defendants' argument that Mega Holdings is so closely identified with the interests of Land Holdings that this Court cannot exercise its supplemental jurisdiction over Land Holdings' dispute with defendants. Mega Holdings and Land Holdings are distinct legal entities that have opted for business reasons to enter into an overall integrated transaction with BNS, only some parts of which are involved in this suit. The Court will not disturb such private business decisions based on defendants' arguments and pleadings.

## C. Defendant Mullen Has No Cognizable Interest in the Property

Mullen claims an interest in the Property by virtue of a License Agreement she signed with VIYH on June 10, 1994, to commence on April 1, 1994, and to expire on October 31, 2001. (Mullen's Mot. to Dismiss Ex. A.) For a variable fee, beginning at $ 3,085 per month, Mullen as licensee is allocated "an area not exceeding 1800 square feet of office space . . . at the premises commonly known as the Yacht Haven Hotel and Marina . . . in the location designated by Lessor." (*Id.* ¶ 1.)

■ Unfortunately, the very licensing agreement Mullen relies on makes it crystal clear that she has never had an interest in the Property:

> This License Agreement confers no real property interest upon the Licensee and the obligations of the parties hereto are contractual only. This License Agreement shall not be recorded at any government office authorized to maintain real property records, and the recording or attempt to record this document by the Licensee shall constitute a default of this License Agreement.

(*Id.*) Defendant Mullen has no legal basis on which to contest this foreclosure action by Land Holdings against Mega Holdings. Accordingly, Mullen's motion to dismiss will be denied and summary judgment will be entered in favor of Land Holdings against Kathy Mullen d/b/a Regency Charter Services, Inc.

## D. Enforceability of the Mortgage

Aquamarine claims an interest in the Property by virtue of a Commercial Lease Agreement signed by Aquamarine and VIYH on July 31, 1994. (Aquamarine's Mot. to Dismiss Ex. H.) The lease term is for twenty years, commencing August 1, 1994, and ending July 31, 2014, with Aquamarine paying an annual rent of $ 2,400 for "an area not exceeding 338 square feet of office space at the premises commonly known as the Ramada Yacht Haven Hotel and Marina . . . in the location designated by Lessor." (*Id.* ¶ 2.) Aquamarine entered into the lease with the agreement that it was

subordinate to the first priority Mortgage with BNS and subject to being extinguished by foreclosure if VIYH defaulted on its debt obligation, for the lease agreement is expressly made subordinate to the Mortgage. (*See* Aquamarine's Mot. to Dismiss Ex. H ¶ 6.)

Aquamarine advanced no credit and provided no separate consideration for the lease, other than its promise to pay the rent when due. Aquamarine also did not negotiate any right to protect itself from VIYH's default. Indeed, Aquamarine accepted and executed a lease agreement which could not be recorded on the land records because it was not in recordable form, (*see* Aquamarine's Mot. to Dismiss Ex. H, at 5 (landlord's signature on lease agreement is not acknowledged or notarized)), and thus is not a lien or an encumbrance on the title to the Property. Aquamarine thereby knowingly agreed that its possessory interest could be extinguished if VIYH or a successor owner such as Mega Holdings defaulted on the Mortgage.

Nevertheless, defendant first asserts that there is no valid mortgage which Land Holdings can foreclose. Aquamarine contends that VIYH's deed in lieu of foreclosure to YHH extinguished the Mortgage then held by BNS, because it was in full satisfaction of VIYH's loan obligation to BNS. Aquamarine next argues that its lease does qualify as a junior interest which cannot be foreclosed, since BNS, and Land Holdings as its successor in interest, knew the Property was subject to defendant's lease when they negotiated the Deed in Lieu Agreement with VIYH. (See Aquamarine's Mot. to Dismiss at 19-20.)

### 1. Merger Doctrine Does Not Apply to Mortgages

Aquamarine's first argument is based in part on the discredited notion of merger and on the assumption that the holder of the Mortgage, BNS, acquired fee title to the Property through the deed in lieu. As defendant would have the Court apply this ancient doctrine, the mortgagee's interest and the fee title were held by the same entity, BNS, and therefore the lesser estate or interest in the Property, evidenced by the Mortgage, merged into the greater estate or interest, evidenced by the deed conveying fee title, and extinguished the Mortgage for all purposes.

481

■ It is thus necessary to put to rest, once and for all time, that in the Virgin Islands, "the doctrine of merger does not apply to mortgages or affect the enforceability of a mortgage obligation." RESTATEMENT (THIRD) PROPERTY: MORTGAGES ["RESTATEMENT"] § 8.5, at 608 (1997).[5] The introductory comment to section 8.5 summarizes the doctrine and the reasons for not applying it to mortgages:

> Under the traditional statement of the merger doctrine, when two consecutive estates in land are held by the same person, the estates coalesce into one unless the owner intends to keep them separate. Even though this centuries-old principle developed initially as a title simplification device, it took root in the law of mortgages as well. As applied in the mortgage setting, the theory holds that when a mortgagee's interest and a fee title become owned by the same person, the lesser estate, the mortgage, merges into the greater, the fee, and is extinguished unless the holder intends a contrary result. This extension of the merger principle has created one of the most complex, confusing, and frequently litigated areas of mortgage law. . . . This situation is especially unfortunate because the doctrine is simply unnecessary in the modern mortgage law context. In every mortgage context a court will be able to reach a just and equitable result without resort to the vagaries of the merger doctrine. Moreover, ending reliance on merger makes mortgage law more predictable and efficient. Consequently, this section seeks to end mortgage law's misplaced reliance on merger by making it clear that the doctrine is inapplicable both to mortgages and the obligations they secure.

*Id.* § 8.5 cmt. a, at 608. The comment goes on to note that

---

[5] Other than a case in the Territorial Court, the Court has been unable to find any decisions in this jurisdiction construing or applying the "merger doctrine." *See Aviation Assocs. v. Virgin Islands Port Auth.*, 26 V.I. 24, 33 (Terr. Ct. 1990) ("The doctrine of merger is not favored either at law or in equity and will not be applied in the absence of an intent on the part of the person acquiring both estates to effect a merger and extinguish existing obligation . . . ."). In the absence of such local law to the contrary, the rules of common law as expressed in the American Law Institute's restatements of law shall be the rules of decision in courts of the Virgin Islands. *See* 1 V.I.C. § 4.

this limitation on merger is clearly appropriate in the mortgage context because a mortgagee that acquires fee title to the encumbered land virtually always has practical reasons for keeping the mortgage lien distinct from the fee title. For example, if the mortgagee acquires the fee title and thereafter discovers junior liens on the title, the mortgage (if it is regarded as continuing to subsist) can be foreclosed to eliminate them.

. . . .

The doctrine generates a significant amount of litigation, primarily by junior lienors attempting to establish that the mortgagee-owner's mortgage merged into the fee title, and therefore cannot be foreclosed to eliminate the junior lien. The resulting case law is a morass.

*Id.* § 8.5 cmt. a, at 610.

### 2. BNS' Mortgage Did Not Merge into the Property

Applying section 8.5 of the Restatement (Third) of Property, as explicated above, the Mortgage from VIYH to BNS did not merge into the fee title to the Property. Aquamarine relies upon the recitation in the Deed in Lieu Agreement that VIYH's deed in lieu to BNS "or its nominee" was "in *complete satisfaction* of the Indebtedness and other obligations under the Loan Agreement on the terms and conditions set forth in" the agreement. (Aquamarine's Mot. to Dismiss Ex. E, at 2 (emphasis added).) Defendant also points to the General Release Agreement, dated April 15, 1997. (*See* Surreply Ex. N, at 2.)

The Restatement recognizes the social desirability of allowing a commercial lender and borrower to "workout" a problem loan through a deed in lieu of foreclosure, noting that it is "common for a mortgagee to take a conveyance from the mortgagor in full or partial satisfaction of the mortgage obligation and as a substitute for foreclosure." RESTATEMENT § 8.5 cmt. b, at 611. A mortgagee always must be on the alert for junior interests because a "deed in lieu of foreclosure is not, after all, a foreclosure, and it will not operate to terminate such [interests]." *Id.* § 8.5 cmt. b, at 612. This concern stems from considerations of equity and the law of foreclosure, however, and has nothing to do with the doctrine of

merger. Thus, "except in extremely rare circumstances," discussed below, the mortgage remains effective "against liens or other interests that prior to the conveyance were junior to it," even where, "as part of the deed-in-lieu transaction, the obligation is canceled and the mortgage is released of record." *See id.* § 8.5 cmt. b., illus. 1-4.

■ In the foregoing discussion, the Court has accepted Aquamarine's questionable refusal to recognize that YHH, the nominee of BNS who took the fee title, had a valid separate legal identity from BNS, which retained the mortgagee. Neither the defendant nor the Court are in a position to question the Bank's business decision to create YHH as a distinct and separate legal corporation to act as its nominee to accept the deed from VIYH under the Deed in Lieu of Foreclosure Agreement. (*See* Complaint Ex. 5.) It is undisputed that YHH took the fee title to the Property, while BNS retained the Mortgage on the Property. If the fee title to the Property and BNS's mortgage interest in the Property were never held by the same entity, then there was no occasion for the merger doctrine to operate to merge the Mortgage with the fee title. Since the merger doctrine does not apply to this case, however, there is no need for the Court to resolve this question.

*3. Aquamarine's Lease Remains Subject to the Mortgage and May Be Foreclosed by Land Holdings*

Since the merger doctrine does not apply to mortgage law, almost all concerns with junior interests are eliminated from loan workouts using deeds in lieu, by which the owner-borrower-mortgagor conveys its equity of redemption to the lender-mortgagee.

> Thus, a conveyance of the equity of redemption by a mortgagor or subsequent grantee to a mortgagee will not, except in extremely rare circumstances, terminate the latter's mortgage as against liens or other interests that prior to the conveyance were junior to it. This will be the case even where, as part of the deed-in-lieu transaction, the obligation is canceled and the mortgage is released of record. . . . The junior lienholder suffers no unjustifiable

injury in these settings, but is in the same position as if there had been a judicial foreclosure to which the junior lienor was not made a party: The junior lien is not terminated, but neither is it elevated. To reach a contrary result would confer on the junior lienor an unbargained-for windfall. Thus, [not applying the doctrine of merger to mortgages] prevents unjust enrichment of that junior interest.

RESTATEMENT § 8.5 cmt. b, at 613.

The mortgagee who accepts title to the mortgaged land via a deed in lieu of foreclosure with actual knowledge of a junior lien securing a debt obligation brings itself within one of those extremely rare circumstances in which it will be deemed to have waived the right to foreclose on that lien. The Restatement comment describes the characteristics of the rare circumstance which Aquamarine claims covers its junior interest in the Property:

> The mortgagee-grantee's decision to take the conveyance [with knowledge of the junior lien] takes into account the extent to which the lien reduces the value of the [mortgagor-] grantor's equity in the real estate. Even though the mortgagee-grantee does not assume the junior lien, its acquisition of title subject to it renders the real estate the primary payment source. If the junior lienor thereafter recovers from the mortgagor-grantor, the latter is subrogated to the lien and can foreclose on the land to satisfy the obligation. . . . However, if the mortgagee-grantee is permitted to use foreclosure to terminate the junior lien, the mortgagor-grantor will be unable to reach the real estate. In addition, the mortgagee-grantee will be unjustly enriched because it will own the real estate free and clear of liens.

*Id.* § 8.5 cmt. b, at 614.

Aquamarine has tried to convince the Court that its junior leasehold interest is a junior "lien" that cannot be foreclosed because BNS knew about the lease when it negotiated for the deed

in lieu from VIYH to YHH as its nominee.[6] Defendant has further attempted to argue that Land Holdings will receive an unjust windfall if it is allowed to foreclose Aquamarine's junior lease interest. The Court notes, however, that Aquamarine's unrecorded and unrecordable commercial lease has none of the characteristics entitled to protection under the Restatement's reasoning. The extremely rare circumstance of the Restatement relied on by defendant does not describe the facts of this case, as demonstrated by a comparison of the characteristics of both.

First, even assuming that BNS or its nominee, YHH, and Land Holdings knew of the existence of Aquamarine's lease, there is no basis for a presumption that it reduced the value of VIYH's equity in of the Property. The very terms of the lease obviously gave Aquamarine no rights against the Mortgage or to sue VIYH or its successors for defaulting on the Mortgage. Being subject to the Mortgage and liable to losing its lease by foreclosure is exactly what Aquamarine bargained for when it executed the lease with VIYH in 1994. Hence, the existence of the lease did not and does not reduce the value of VIYH/Mega Holding's equity in the Property. *Compare with id.* (waiver of right to foreclose based in part on finding that junior lien reduced value of property).

Second, BNS/Land Holding's acquisition of title to the Property did not "render[ ] the real estate the primary payment source," since there was no obligation due to Aquamarine from the grantor/mortgagor, VIYH. There being no basis for Aquamarine as junior "lienor" to recover from VIYH/Mega Holdings, there can be no occasion for Mega Holdings to be subrogated to a right to foreclose on the Property. Concomitantly, Land Holdings cannot be unjustly enriched by foreclosing and extinguishing the Mortgage and Aquamarine's subordinate lease. *Compare with id.* (Mortgagee who took deed in lieu with knowledge of junior lien that reduced value of the property is unjustly enriched if lien is extinguished.).

■ Simply stated, Aquamarine knowingly accepted a commercial lease containing a clause which subordinated the lease to the

---

[6]For purposes of this discussion, the Court has assumed that BNS had actual knowledge of Aquamarine's lease when it signed the Deed in Lieu of Foreclosure Agreement and, further, that this knowledge was imputed to its corporate nominee, YHH.

first priority Mortgage and made it subject to being extinguished by foreclosure if VIYH defaulted on its loan obligation to BNS. Aquamarine advanced no separate money or credit to VIYH and its commercial lease does not secure any monetary obligation due from Mega Holdings, or either of its predecessors in interest, VIYH or YHH. The lease has not been recorded on the land records and does not encumber or constitute a lien on the Property. Therefore, Aquamarine would receive an "unbargained-for windfall" if the Court were to allow its lease to prime Land Holdings' Mortgage. *See id.* § 8.5 cmt. b, at 613. Keeping Land Holdings from foreclosing its Mortgage would unjustifiably elevate Aquamarine's lease from a junior unrecorded interest to a senior unrecorded interest superior to the undisputed first priority Mortgage. Such an advance in priority would be a windfall to Aquamarine because it never expected that its leasehold interest would ever be senior to the Mortgage. *See id.* § 8.5 cmt. a, at 608. If Land Holdings forecloses the Mortgage and receives title to the Property free and clear of Aquamarine's lease, neither Land Holdings nor Aquamarine will be unjustly enriched or receive an unbargained-for windfall.

## E. Summary Judgment to Land Holdings

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Once the moving party properly supports its motion for summary judgment, the non-moving party must establish a genuine issue of material fact in order to preclude a grant of summary judgment. *See* FED. R. CIV. P. 56(E); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

The remaining parties all agree that Land Holdings owns the Mortgage, Mega Holdings has fee title to the Property, Aquamarine executed a lease and Mullen signed a license agreement with VIYH, and Aquamarine and Mullen each claim an interest in the Property as a result of those respective agreements. The only dispute is the legal significance of the original Deed in Lieu of

487

Foreclosure Agreement between BNS and VIYH and some aspects of the complicated transactions that resulted in the current alignment of the parties. The disputed question of law is whether Land Holdings can foreclose the Mortgage and extinguish the interests of Aquamarine and Mullen. Accordingly, this matter is ripe for resolution on the basis of summary judgment.

■ As discussed in great detail above, the law of this jurisdiction permits Land Holdings to foreclose its Mortgage against the defendants. Mullen possesses no legally cognizable interest in the property and has no standing to challenge the foreclosure.[7] While Aquamarine does possess a cognizable leasehold possessory interest in the Property, that interest has always been subordinate to the Mortgage and subject to being extinguished upon foreclosure of the Mortgage. Summary judgment will therefore be entered in favor of Land Holdings against both Aquamarine and Mullen.

## V. CONCLUSION

Accordingly, for the reasons stated above, the Court will deny the motions to dismiss of Aquamarine and Mullen and grant summary judgment in favor of Land Holdings. The Court further finds that Land Holdings has a lien on the Property that is superior to the rights of the defendants and all persons claiming by, through, or under the defendants. The Court will direct Land Holdings to submit the necessary filings so the Court may enter a judgment of foreclosure which will include the amounts due from Mega Holdings, as well as any attorney's fees and costs expended by Land Holdings, and the Property may be sold at public sale. An appropriate order is attached.

### ORDER

For the reasons set forth in the accompanying Memorandum of even date, it is hereby

---

[7] Even if Mullen's interest could be considered a junior interest in the Property, which it clearly is not, see supra Part IV.C. (The License Agreement conferred "no real property interest upon the Licensee and the obligations of the parties hereto are contractual only." (quoting Mullen's Mot. to Dismiss Ex. A, at 17)), it is still subject to the Mortgage and will be extinguished by the foreclosure.

ORDERED that the motion to dismiss of defendant Aquamarine Tours, Inc., is DENIED;

ORDERED that the motion to dismiss of defendant Kathy Mullen d/b/a Regency Charter Services, Inc., is DENIED;

ORDERED that Land Holdings (St. Thomas) Ltd. cross-motion for summary judgment is GRANTED. It is further

ORDERED that Land Holdings (St. Thomas) Ltd. file the necessary pleadings so that the Court may enter a judgment foreclosing Land Holdings' Mortgage and the Property may be sold at public sale.

ENTERED this 8th day of November, 1999.