ATTORNEYS FOR APPELLANT
U.S. BANK, NATIONAL
ASSOCIATION, AS BAFC 2007-1

John S. (Jay) Mercer
Mercer Belanger, P.C.
Indianapolis, Indiana

Aaron J. Stucky
Vorys, Sater, Seymour, and Pease LLP
Cincinnati, Ohio

ATTORNEY FOR APPELLANTS
TRISTAN C. BRIONES II AND CHASE
HOME FINANCING LLC

Gregory A. Kahre
Evansville, Indiana

ATTORNEYS FOR APPELLEE
GERMAN AMERICAN
BANCORP, INC.

James D. Johnson
Kyle R. Rudolph
Jackson Kelly PLLC
Evansville, Indiana



FILED
Sep 22 2015, 9:57 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

U.S. Bank, National Association, as BAFC 2007-1, successor in interest to National City Mortgage Co.,

*Appellant-Plaintiff,*

v.

R. Glenn Miller, Jr. a/k/a R. Glenn Miller, Melinda F. Miller, German American Bankcorp, Inc., successor in interest to Bank

September 22, 2015

Court of Appeals Case No.
87A01-1409-MF-366

Appeal from the Warrick Circuit Court

The Honorable Robert R. Aylsworth, Special Judge

Cause No. 87C01-0803-MF-125

of Evansville, and United States of America,[1]

*Appellees-Defendants.*

German American Bankcorp, Inc., successor in interest to Bank of Evansville,

*Cross-Claimant and Third-Party*

*Plaintiff*,

v.

R. Glenn Miller, Jr., a/k/a R. Glenn Miller, Melinda F. Miller, Tristan C. Briones, II, Chase Home Financing, LLC, successor in interest to Shelter Mortgage Company, LLC, and Republic Bank & Trust Company,

*Cross-Claimants and Third-Party Defendants*.

**Kirsch, Judge.**

---

[1] The Millers, the United States of America, and Republic Bank & Trust Company do not participate in this appeal. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court is a party on appeal.

In this action to foreclose a first priority mortgage against property previously owned by Melinda F. Miller and R. Glen Miller, Jr. ("the Millers"), U.S. Bank, National Association, as BAFC 2007-1 ("U.S. Bank") (successor in interest to National City Mortgage Co. ("NCM")),[2] Tristan C. Briones II ("Briones"), and Chase Home Financing LLC ("Chase") (collectively, "Appellants") appeal the grant of summary judgment in favor of German American Bancorp, Inc. ("German American") (formerly known as Bank of Evansville),[3] granting German American's previously-subordinate lien a first priority on the basis of the merger doctrine.[4] On appeal, Appellants raise various issues, which we consolidate and restate as:

> I. Whether the trial court erred when it set aside the default judgment entered against Bank of Evansville in NCM's mortgage foreclosure, having found that the default judgment was void for lack of notice to Bank of Evansville, which prevented the trial court from obtaining personal jurisdiction; and

> II. Whether the trial court erred when it entered summary judgment in favor of German American determining that German American's

---

[2] On October 7, 2008, NCM assigned its interest in the judgment of foreclosure on the Millers' property to U.S. Bank, who in turn bought the property at a sheriff's sale and resold it to Briones in January 2009. We will refer to U.S. Bank, NCM, or both, as is applicable.

[3] In January 2011, Bank of Evansville merged with German American, leaving German American as the successor and surviving legal entity. In November 2011, the trial court granted Bank of Evansville's motion to substitute German American as the real party in interest. We will refer to German American, Bank of Evansville, or both, as is applicable.

[4] Briones and Chase have, together, filed one appellants' brief, one appendix, and one supplemental appendix. For ease of reference we will refer to those documents as "*Briones's Br.*," "*Briones's App.*," and "*Briones's Supp. App.*" U.S. Bank has filed its own appellant's brief and appendix, which we will refer to as "*U.S. Bank's Br.*" and "*U.S. Bank's App.*" In response to both appellants' briefs, German American has filed one appellee's brief and one appendix, which we will refer to as "*Appellee's Br.*" and "*Appellee's App.*"

junior mortgage was entitled to first priority because the common law doctrine of merger extinguished U.S. Bank's priority interest.

We affirm in part, reverse in part, and remand.[5]

## Summary

This case began more than seven years ago. What started as a simple foreclosure of NCM's mortgage against the Millers' Newburgh, Indiana property ("the Property"), became complicated when senior lienholder NCM named junior lienholder Bank of Evansville as a defendant in the foreclosure action, but failed to serve notice to the proper address. The trial court entered judgment of foreclosure in favor of NCM and against the Millers, and it entered judgment of default against Bank of Evansville. NCM assigned its foreclosure judgment to U.S. Bank, who purchased the Property at a sheriff's sale and, in turn, resold the Property to Briones.

Thereafter, Bank of Evansville filed a motion both to set aside the judgment of default and to add Briones as a necessary third-party defendant, which the trial court granted. About one month later, and as a separate action, NCM filed a complaint for strict foreclosure, claiming that Bank of Evansville's interest was a cloud on the title and asking that its junior lien on the Property be

---

[5] U.S. Bank filed a motion for oral argument; however, we have determined that oral argument is not necessary for the resolution of the instant appeal. Accordingly, we deny U.S. Bank's motion in a separate order issued contemporaneously with this opinion.

extinguished. This strict foreclosure action was consolidated into the original foreclosure action by consent of the parties.

[5]     Cross-claims and third-party complaints added Chase and Republic Bank & Trust Company ("Republic Bank") as parties to Bank of Evansville's action to foreclose on its junior mortgage. German American, who was substituted for Bank of Evansville as the real party in interest, filed a motion for summary judgment, and U.S. Bank filed a cross-motion asking that summary judgment be entered in its favor to allow an adjudication of German American's rights and remedies pursuant to Indiana Code section 32-29-8-4 ("I.C. § 32-29-8-4"). Following a hearing, the trial court, rejecting U.S. Bank's argument that I.C. § 32-29-8-4 should apply to the facts of the instant action, applied the common law merger doctrine from our Supreme Court's decision in *Citizens State Bank of New Castle v. Countrywide Home Loans, Inc.*, 949 N.E.2d 1195 (Ind. 2011). Finding that merger caused U.S. Bank's priority interest to be extinguished, the trial court granted summary judgment and a priority interest to German American's previously subordinate interest.

## Facts and Procedural History

[6]  The undisputed relevant facts are that, in October 2006, the Millers borrowed approximately $774,500[6] from NCM[7] to purchase the Property. To secure the loan, the Millers executed a promissory note and mortgage, pledging the Property as collateral. That same month, NCM's mortgage was recorded as a first priority lien with the Warrick County Recorder.

[7]  One month later, the Millers obtained a home equity line of credit ("HELOC") from Bank of Evansville. To secure the $25,000 line of credit, the Millers executed a second mortgage on the Property, which was recorded with the Warrick County Recorder in November 2006. This HELOC mortgage was second in priority and was recorded prior to a notice of federal tax lien in the amount of $168,382, which the United States of America filed against the Property in October 2007.

[8]  After the Millers defaulted on their loan, NCM filed a complaint on the note and to foreclose the mortgage in March 2008, naming as defendants: (1) the Millers; (2) Bank of Evansville; and (3) the United States. The HELOC mortgage reflected that Bank of Evansville's address was 4424 Vogel Road;

---

[6] For the purposes of this decision, the exact dollar amounts are not important; therefore, we will generally refer only to the dollar amounts and will omit the change.

[7] The Millers initially entered into the promissory note and mortgage with National City Bank, who assigned that mortgage to National City Mortgage Co. ("NCM"), a subsidiary of National City Bank. *Briones's App.* at 95, 112. Because NCM held the mortgage at the time the complaint for foreclosure was filed, we refer to NCM as the party in interest.

however, NCM mistakenly served the notice to 8121 Newbury Road. Bank of Evansville did not have an office on Newbury Road; instead, this address was listed with the Secretary of State on a form memorializing Bank of Evansville's corporate name reservation, which had expired in 1998. Bank of Evansville did not file a notice of appearance and later claimed it had not known about the foreclosure.

[9] NCM filed a motion for summary judgment on its foreclosure complaint in May 2008, to which neither the Millers nor Bank of Evansville responded. On July 2, 2008, the trial court, noting that all of the defendants were properly before the court by service of process, granted summary judgment in favor of NCM as to all defendants ("Decree of Foreclosure"). The trial court: (1) entered a default judgment against Bank of Evansville;[8] (2) awarded NCM a "personal summary judgment"[9] against the Millers in the amount of $769,425.73;[10] and (3) determined that the United States had a valid judgment lien on the Property with a one-year right of redemption to satisfy its tax lien.

---

[8] The order itself provided, that "the defendant, *Bank of America*, not having appeared or filed a responsive pleading herein is in default." *Briones's App*. at 32 (emphasis added). "Bank of America" is not a party to this conflict; during the July 25, 2013 hearing, James Johnson, counsel for Bank of Evansville, stated, "[T]hey meant Bank of Evansville." *2013 Hr'g Tr*. at 44.

[9] Indiana Code section 32-30-10-5 in pertinent part provides that in rendering judgment of foreclosure, the courts shall "(1) give personal judgment against any party to the suit liable upon any agreement for the payment of any sum of money secured by the mortgage"; and "(2) order the mortgaged premises . . . to be sold first before the sale of other property of the defendant."

[10] This amount was calculated as follows: "the principal amount of $738,081.50, plus interest and late charges in the amount of $29,686.23 to March 25, 2008, plus the net sum of $658.00 expended by [NCM] for continuation of title necessary for these proceedings and for advances made by [NCM], plus attorney's fees in the amount of $1,000.00, making this judgment a total amount of $769,425.73 . . . ." *U.S. Bank App*. at 47.

*Briones's App.* at 32. The trial court ordered that the Property be sold at sheriff's sale and foreclosed both NCM's mortgage as a first priority lien and the equity of redemption of all defendants and all persons claiming under and through those defendants.

[10] NCM assigned its foreclosure judgment to U.S. Bank for an unknown value in October 2008, and U.S. Bank, in turn, purchased the Property at sheriff's sale for $528,500, approximately $240,000 less than the amount of NCM's judgment. That same month, U.S. Bank recorded its sheriff's deed with the Warrick County Recorder. In January 2009, U.S. Bank sold the Property to Briones by means of a special warranty deed, which was recorded in April 2009. Briones paid about $450,000 for the Property, $220,000 of which he borrowed from, and was secured by a mortgage to, Chase.[11] *2013 Hr'g Tr.* at 27.[12] Chase filed its mortgage lien against the Property, which was superior to a commercial real estate mortgage lien held by Republic Bank.

---

[11] On or about March 18, 2009, the Property was sold by U.S. Bank to Briones; the sale was facilitated by a purchase money mortgage that Briones entered into with Shelter Mortgage Company. Both Briones's conveyance and Shelter's mortgage were recorded with the Warrick County Recorder in April 2009. Chase Home Financing, LLC ("Chase") is the assignee of all interest in and to Briones's mortgage with Shelter. Shelter was named in German American's motion to set aside. Thereafter, Chase was named as the true party in interest. To avoid confusion, we will refer to the entity that held Briones's mortgage as Chase.

[12] Judge David O. Kelley initially presided over the proceedings of this foreclosure action, but he withdrew in late 2012. Prior to withdrawing, Judge Kelley held a hearing, on June 19, 2012, to address the motions for summary judgment filed by German American and U.S. Bank to foreclosure the HELOC mortgage; however, no decision was made following this hearing. We will cite to Judge Kelley's hearing as *2012 Hr'g Tr.* Judge Robert Aylsworth was appointed as a special judge to this case in December 2012 and held a hearing on the same motions for summary judgment on July 25, 2013. We will cite to Judge Aylsworth's hearing as *2013 Hr'g Tr.*

[11] Although the Millers stopped paying on the NCM mortgage in October 2007, they continued to make payments on the HELOC until September 2009. In October 2009, Bank of Evansville learned that a default judgment had been entered against it in NCM's foreclosure and that the Property securing its mortgage had been sold to Briones. The next month, Bank of Evansville filed two motions. In the first, Bank of Evansville requested that the default judgment be set aside, claiming it was void pursuant to Trial Rule 60(B)(6) because it had not been properly served, and, therefore, the trial court did not have personal jurisdiction over it. *Briones's App*. at 37-58. In connection with that motion, Bank of Evansville designated evidence, including an affidavit ("Sutton Affidavit") of Mike Sutton, President and CEO of Bank of Evansville, in which Sutton stated that the Bank never received a copy of the summons or complaint and was not aware of the litigation or sheriff's sale until October 2009. *Id*. at 54. In the second motion, Bank of Evansville requested that Briones, be joined as a necessary third-party defendant pursuant to Trial Rule 19(A), to ensure the just adjudication of the controversy. *Id*. at 59-62. The trial court held a hearing and granted both motions. Briones entered an appearance, as did Chase and Republic Bank, each of whom had liens to protect.

[12] In January 2010, Bank of Evansville filed its answer and affirmative defenses to NCM's original complaint to foreclose on the Property, as well as a cross-claim and third-party complaint against the Millers, Briones, Chase, and Republic

Bank, to foreclose on the mortgage securing the HELOC.[13] *Appellee's App.* at 40-63. Briones filed an amended answer to German American's third-party complaint in December 2011, as well as a third-party complaint against U.S. Bank. *Id*. at 127-44. In his amended pleading, Briones alleged that U.S Bank breached the terms of the special warranty deed because "[a]t the time of the execution and delivery of said warranty deed by U.S. Bank to Briones, [the Property] was not free and clear of all encumbrances, but was still subject to a mortgage given by the prior titleholders, [the Millers]." *Id*. at 134.

[13] Meanwhile, on January 29, 2010, having already transferred the judgment of foreclosure to U.S. Bank, NCM filed a separate complaint for strict foreclosure (Cause No. 87C01-1001-MF-37), asking the trial court to extinguish Bank of Evansville's junior lien on NCM's original mortgage. *Appellee's App*. at 64. In its complaint, NCM detailed the prior proceedings and noted that it had been granted the status of first lienholder by virtue of the Decree of Foreclosure. *Id*. at 65. Bank of Evansville filed an answer and affirmative defenses to NCM's complaint for strict foreclosure. *Id*. at 92. On May 28, 2010, the strict foreclosure action was consolidated into the instant action by consent of the parties.

---

[13] The HELOC provided, and the mortgage secured, a line of credit to the Millers up to $25,000. There is no evidence how much the Millers borrowed from the HELOC. In the letter of default, however, Bank of Evansville set forth that, at the time of default, the Millers owed $25,000, plus accrued interest. *Appellee's App*. at 60. The letter also provided that the Millers had thirty days to dispute the amount owed. *Id*. at 61. We find no evidence in the record before us that the Millers disputed that they owed the amount claimed.

[14] While this instant action was pending in the trial court, the Indiana Supreme Court issued its *Citizens* decision in June 2011, a decision in which the Court applied the merger doctrine to land that was foreclosed and thereafter purchased by a mortgagee, thus, leaving the mortgagee with no seniority over a junior lienholder erroneously omitted from the foreclosure proceedings. In response to that decision, and less than nine months later, in March 2012, the Indiana General Assembly enacted I.C. § 32-29-8-4, which effectively overruled the portions of *Citizens* dealing with the merger doctrine. Specifically, this statute prevented a senior lienholder's interest from being "extinguished by merger with the title to the property conveyed to a purchaser through a sheriff's deed executed and delivered under IC 32-29-7-10 until the interest of any omitted party has been terminated." Ind. Code § 32-29-8-4(h). Furthermore, it provided that "until an omitted party's interest was terminated," "any person claiming by, through, or under such an owner, is the equitable owner of the senior lien upon which the foreclosure action was based and has all rights against an omitted party as existed before the judicial sale." *Id*. The instant case remained pending for more than one year after the enactment of I.C. § 32-29-8-4.

[15] German American was substituted for Bank of Evansville as the real party in interest in November 2011. *Appellee's App*. at 125. One month later, German American filed a motion asking the trial court to enter summary judgment in its favor in an amount to cover monies due under its note and mortgage and to declare that German American had a valid first lien with priority over all other

liens and defendants. German American also asked that the trial court foreclose the equity of redemption of the Millers and all defendants and persons claiming through them and under them and order that the Property, which had already been transferred from U.S. Bank to Briones, be sold to satisfy the amount of the Millers' HELOC debt to German American. Although this motion was filed six months after our Supreme Court handed down its decision in *Citizens*, German American did not cite to that opinion.

[16] One month after I.C. § 32-29-8-4 became effective, U.S. Bank filed a cross-motion for summary judgment arguing that it was "entitled to an adjudication of its rights pursuant to Ind. Code § 32-29-8-4 and summary judgment as a matter of law." *Briones App*. at 69. Briones and Chase filed a brief in opposition to German American's motion for summary judgment, arguing: (1) that German American's designation of evidence was insufficient; and (2) that German American's reliance on our Supreme Court's decision in *Citizens*, as support for its motion for summary judgment, was misplaced. *Appellee's App*. at 178-84. Elaborating, Briones and Chase noted that German American had not even initially cited to *Citizens*. *Id*. at 180. Instead, German American's December 2011 motion for summary judgment was solely directed at the liability of the Millers under German American's 2006 loan documents. *Id*. It was only in a subsequent reply to the response of Republic Bank that German American cited to *Citizens*, questioning whether "it was still feasible under Indiana law to foreclose a subordinate lienholder that had been named as a defendant in the original foreclosure but apparently not served with process."

*Id*. In June 2012, Judge David Kelley held a hearing on the parties' motions for summary judgment, but did not decide the case prior to the time of his withdrawal. Thereafter, Judge Robert Aylsworth was appointed as special judge to the case.

[17] On July 25, 2013 Judge Aylsworth held a hearing on German American's motion for summary judgment. The trial court granted partial summary judgment ("Partial Judgment") in favor of German American on August 21, 2013. The court concluded that disposition of the "motions for summary judgment [was] controlled by the Indiana Supreme Court's decision in *Citizens* . . . and, pursuant to that case the transfer of title by U.S. Bank to Briones by special warranty deed . . . *merged* U.S. Bank's mortgage lien into the legal title, but did not affect German American's subordinate mortgage when German American did not receive notice of the foreclosure." *Briones App*. at 167 (emphasis added). The Partial Judgment also provided that I.C. § 32-29-8-4 did "not apply retroactively to save U.S. Bank from the operation of case law, as the statute on its face was effective upon passage, [in March 2012,] long after the date of the execution of the U.S. Bank special warranty deed to transfer title to Briones." *Id*. Accordingly, the trial court concluded "that statute has, in the court's opinion, no applicability or relevance to the matters at issue before the court." *Id*. The trial court did not specifically rule on, or even mention, the pending motion for strict foreclosure.

[18] U.S. Bank moved for an order certifying the Partial Judgment for interlocutory appeal. Briones and Chase joined that motion, which the trial court granted.

U.S. Bank then moved for certification of the trial court's Interlocutory Order; our court denied the requested interlocutory appeal. Following an evidentiary hearing regarding German American's attorney fees,[14] the trial court entered its final judgment on August 6, 2014, in which it: (1) granted German American a judgment against the Millers on the HELOC mortgage in the amount of more than $150,000 plus interest; (2) concluded that U.S. Bank's, Chase's, and Republic Bank's interests were all "subordinate to German American's interests"; and (3) foreclosed German American's mortgage on the Property "as a first and prior lien subject only to any county real estate tax liens," ordering that "equity of redemption of all of the parties herein and all persons claiming under and through them is foreclosed." *U.S. Bank's App.* at 40, 41. Appellants now appeal.

## Discussion and Decision

## I. Setting Aside the Default Judgment

[19]   In the July 2008 Decree of Foreclosure, the trial court granted summary judgment in favor of NCM, and entered a default judgment against Bank of Evansville. In November 2009, Bank of Evansville filed a motion to set aside the default judgment, claiming that lack of notice precluded the trial court from

---

[14] The evidentiary hearing was held on July 28, 2014, the transcript of which, if any, is not in the record before us.

having personal jurisdiction over Bank of Evansville thus making the default judgment void. The trial court agreed and set aside the default judgment.

[20] The decision to set aside the default judgment made it possible for Bank of Evansville to file its complaint to foreclose on its HELOC mortgage, a complaint upon which the trial court later entered summary judgment in favor of Bank of Evansville, granting it first priority over all other interests in the Property. Appellants contend that the trial court abused its discretion when it set aside the default judgment. With the goal of reversing summary judgment in favor of German American, Bank of Evansville's successor in interest, Appellants insist that, but for the act of setting aside the default judgment, Bank of Evansville would have been bound by the Decree of Foreclosure and, thus, precluded from filing to foreclose on the HELOC mortgage.

[21] Bank of Evansville brought its motion to set aside default judgment under Trial Rule 60(B)(6), alleging that the default judgment was void for lack of personal jurisdiction because it had no notice of NCM's foreclosure proceedings. A motion made under Trial Rule 60(B) to set aside a judgment is addressed to the equitable discretion of the trial court. *In re Paternity of P.S.S.*, 934 N.E.2d 737, 740-41 (Ind. 2010). "Typically, we review a trial court's ruling on a motion to set aside a judgment for an abuse of discretion, meaning that we must determine whether the trial court's ruling is clearly against the logic and effect of the facts and inferences supporting the ruling." *Hair v. Deutsche Bank Nat'l Trust Co.*, 18 N.E.3d 1019, 1022 (Ind. Ct. App. 2014) (citing *Yoder v. Colonial Nat'l Mortg.,* 920 N.E.2d 798, 800-01 (Ind. Ct. App. 2010)). "However, whether

personal jurisdiction exists over a defendant is a question of law that we review de novo." *Id.* "A judgment entered where there has been insufficient service of process is void for want of personal jurisdiction." *Id*. (citing *Front Row Motors, LLC v. Jones,* 5 N.E.3d 753, 759 (Ind. 2014)).

[22] In its motion to set aside, Bank of Evansville argued that the trial court did not obtain personal jurisdiction over it because NCM served the notice of foreclosure to the wrong address, and Bank of Evansville did not know it was named as a defendant in NCM's foreclosure proceedings. Bank of Evansville attached to its motion the Sutton Affidavit, in which Sutton stated that Bank of Evansville's offices were located on Vogel Road and not Newbury Road, and that the Indiana Secretary of State records listed the correct Vogel Road address. Bank of Evansville maintained that it did not receive a copy of the summons or complaint and was not aware of the litigation or sheriff's sale. The trial court agreed that Bank of Evansville did not have proper notice and set aside the default judgment on the basis that the trial court did not have personal jurisdiction over Bank of Evansville.

[23] Our court has recognized, "[j]unior lienholders and others having a junior claim or interest in mortgaged property are proper parties to a foreclosure action; necessary parties include those with an ownership interest in the property. Both proper and necessary parties *must be joined* in a foreclosure action before that action will be binding upon them." *Deutsche Bank Nat'l Trust Co. v. Mark Dill Plumbing Co.,* 903 N.E.2d 166, 169 (Ind. Ct. App. 2009) (emphasis in original) (quoting another source), *clarified on reh'g*, 908 N.E.2d 1272 (Ind. Ct. App.

2009). "The law in this jurisdiction is well settled that a junior lienholder who is not made a party to a foreclosure action is in no wise bound by such foreclosure and his situation after the foreclosure remained the same as it had been before." *Citizens*, 949 N.E.2d at 1199; s*ee also Catterlin v. Armstrong,* 101 Ind. 258, 264 (1885) (characterizing as "settled" the proposition "[t]hat the rights of a junior mortgagee, who was not made a party, are in no manner affected by the foreclosure of and sale on a senior mortgage").

[24] "Rule 60(B)(6) provides for relief from judgments that are "void." *CitiMortgage, Inc. v. Barabas*, 975 N.E.2d 805, 816 (Ind. 2012) (citing *Shotwell v. Cliff Hagan Ribeye Franchise, Inc.,* 572 N.E.2d 487, 489-90 (Ind. 1991)). "A judgment issued without personal jurisdiction is void, and a court has no jurisdiction over a party unless that party receives notice of the proceeding." *Id.* Bank of Evansville's Vogel Road address was correctly listed on the HELOC mortgage. Whether due to oversight or mistakenly choosing the Newbury Road address from an expired name reservation form, NCM served the notice to the wrong address, and Bank of Evansville did not receive that notice or otherwise know about NCM's action to foreclosure on the Property. Without proper notice, the trial court never had jurisdiction over German American. Accordingly, the default judgment was void as to German American, and the trial court did not abuse its discretion when it set aside the default judgment against Bank of Evansville.

Furthermore, we reject any contention that the trial court set aside the entire judgment. *Briones's Br*. at 24; *U.S. Bank's Br*. at 13. In the Partial Judgment, the trial court made its position absolutely clear:

> Judge Kelley's December 29, 2009 order granting the motion to set aside default judgment as to German American and to join Briones as a necessary party, expressly addressed "any judgment obtained by default," and no more. *This order did not vacate the prior judgment and order for foreclosure in its entirety, but expressly set aside only the judgment obtained by default against German American.* As such, the prior Sheriff's sale and purchase by U.S. Bank, with the subsequent transfer to Briones are confirmed as valid in all respects, except as to German American, who is entitled to proceed toward a judgment of foreclosure . . . ."

*Briones's App*. at 167-68 (emphasis added).

## II. Summary Judgment

Appellants next argue that the trial court erred in granting summary judgment to German American, finding that German American had the right to foreclose on its HELOC mortgage as a first priority lienholder. We review a grant of summary judgment using the same standard as the trial court. *Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853, 858 (Ind. Ct. App. 2010). Summary judgment is proper "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We must construe all facts and reasonable inferences drawn from them in favor of the nonmoving party. *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1282 (Ind. 2006). We may affirm a summary judgment ruling if it is sustainable on any

legal theory or basis found in the evidentiary matter designated to the trial court. *W. Am. Ins. Co. v. Cates*, 865 N.E.2d 1016, 1020 (Ind. Ct. App. 2007), *trans. denied*.

[27] The facts are not in dispute. The parties agree that U.S. Bank (successor in interest to NCM)[15] and German American (successor in interest to Bank of Evansville)[16] each loaned money to the Millers, entered into mortgages with the Millers to secure those loans, and properly filed those mortgages with the Warrick County Recorder. U.S. Bank's mortgage secured a loan to the Millers in the amount of $774,500, and German American's mortgage, which was in a junior position, secured the Millers' $25,000 HELOC. Because German American is not bound by the original Decree of Foreclosure, due to the default judgment being set aside, the question remains as to what rights, if any, Appellants have in the strict foreclosure action and what priority interest German American has in the foreclosure of its HELOC mortgage.

[28] In granting summary judgment, the trial court stated:

> 5. The disposition of the parties' motions for summary judgment is controlled by the Indiana Supreme Court's decision in [*Citizens*] and, pursuant to that case the transfer of title by U.S. Bank to Briones by the special warranty deed executed on January 27, 2009, after U.S.

---

[15] Here, the interests, but not the names of the parties, are significant for our analysis. Therefore, in this section of the decision we will refer to any interest of NCM or U.S. Bank as being held by U.S. Bank, unless the facts otherwise require.

[16] Here, again, the interests, but not the names of the parties, are significant for our analysis. Therefore, in this section of the decision we will refer to any interest of Bank of Evansville or German American as being held by German American, unless the facts otherwise require.

> Bank purchased the [Property] at Sheriff's foreclosure sale by a credit bid on October 9, 2008, merged U.S. Banks' mortgage lien into the legal title, but did not affect German American's subordinate mortgage when German American did not receive notice of the foreclosure. As such, German American's lien has priority.
>
> 6. Indiana Code 32-29-8-4 does not apply retroactively to save U.S. Bank from the operation of case law, as the statute on its face was effective upon passage, March 19, 2012, long after the date of the execution of the U.S. Bank special warranty deed to transfer title to Briones. Therefore, that statute has, in the court's opinion, no applicability or relevance to the matters at issue before the court.

*Briones's App*. at 167. The trial court did not specifically rule on NCM's motion for strict foreclosure, which had been merged into the instant action.

[29] "An action to foreclose a mortgage is essentially equitable in nature." *Mark Dill Plumbing Co.*, 903 N.E.2d at 168 (citing *Centex Home Equity Corp. v. Robinson*, 776 N.E.2d 935, 942 (Ind. Ct. App. 2002), *trans. denied*). Notwithstanding equity's influence, however, "rules of law obviously guide the foreclosure process." *First Fed. Sav. Bank v. Hartley*, 799 N.E.2d 36, 40 (Ind. Ct. App. 2003) (citing Ind. Code §§ 32-30-10-1 through -14 (setting out procedures for mortgage foreclosure actions)). Moreover, "where substantial justice can be accomplished by following the law, and the parties' actions are clearly governed by rules of law, equity follows the law." *Id*.

[30] The parties recognize that *Citizens* was handed down in June 2011 and that I.C. § 32-29-8-4 became effective nine months later before the trial court entered summary judgment. The parties disagree, however, regarding the applicable law to determine the priority of liens against the Property. Appellants contend that summary judgment in favor of German American was improper because the trial court erred in applying *Citizens*' now-abrogated discussion of the merger

doctrine to conclude that German American's junior mortgage was entitled to first priority. They maintain that the trial court should have applied I.C. § 32-29-8-4.[17] German American responds that in 2009, when U.S. Bank received title by sheriff's deed and then transferred the Property to Briones, the merger doctrine—the common law in effect at the time—extinguished U.S. Bank's mortgage lien and merged that interest into U.S. Bank's ownership interest. German American asserts that, because that merger had already occurred in 2009, I.C. § 32-29-8-4 could not be applied retroactively to resurrect U.S. Bank's priority lien.

[31] A discussion of the doctrines of merger and strict foreclosure, concepts integral to our Supreme Court's decision in *Citizens* and to the Indiana General Assembly's enactment of I.C. § 32-29-8-4, is warranted and aids our analysis. The "merger [doctrine] traditionally applied to join two consecutive interests in land when both interests came into the hands of one person." *Citizens*, 949 N.E.2d at 1197. "The doctrine primarily operated to simplify real property titles in an era before land was conveyed by written instruments. Courts subsequently extended the merger doctrine to mortgages." *Id*. Modern merger occurs: "When a person holds two estates in property in the same right and without an intervening estate, the two estates will coalesce to one estate unless a beneficial reason exists for keeping them distinct." Ann M. Burkhart, *Freeing*

---

[17] Briones also claims that he should prevail on appeal pursuant to the statutory protections afforded a bona fide purchaser such as Briones. Our resolution of this issue makes a discussion of that issue unnecessary.

*Mortgages of Merger*, 40 Vand. L. Rev. 283, 284 (1987). The "doctrine of merger operates in these cases as a technical, nonsubstantive rule concerning property titles. If the holder of the interests is not benefited in any way by keeping the estates distinct, they will merge to simplify the state of title." *Id.*

[32] Equity has never favored the rule of merger. 4 Richard R. Powell & Patrick J. Rohan, *Powell on Real Property* § 37.32[1] (Michael A. Wolf ed. 2000). "If there is any advantage to be gained by continuing the independent existence of the rights, such independent existence will be maintained. This equitable exception to the doctrine of merger is explained as a product of 'intent,' actual or presumed." *Id.* (footnotes omitted).

[33] At English common law, "strict foreclosure" was a rare procedure that gave the mortgagee title to the mortgaged property—without first conducting a sale—after a defaulting mortgagor failed to pay the mortgage debt within a court-specified period. *Mark Dill Plumbing Co.*, 903 N.E.2d at 168. In states like Indiana, however, where a mortgage is regarded as creating only an equitable lien,[18] and not as a conveyance of the legal estate, the remedy by strict foreclosure can only be resorted to under special and peculiar circumstances.

---

[18] "Indiana is unequivocally committed to the lien theory and the mortgagee has no title to the land mortgaged. The right to possession, use and enjoyment of the mortgaged property, as well as title, remains in the mortgagor, unless otherwise specifically provided, and the mortgage is a mere security for the debt." *In re Phillips*, 368 B.R. 733, 743 (Bkrtcy. N.D. Ind. 2007) (quoting *Kosciusko Cty. Rural Elec. Membership Corp. v. N. Ind. Pub. Serv. Co.*, 248 Ind. 482, 229 N.E.2d 811, 817 (1967)) (citations omitted).

*Id*. Because it is a harsh remedy, strict foreclosure "should be pursued only in cases where a statutory foreclosure and sale would be inappropriate." *Id*.

[34] Under strict foreclosure, "[t]he mortgagee, as owner of the legal interest, could seek an ascertainment of the amount due and a decree that the defendant pay this amount within a short period to be fixed by the court." Powell & Rohan, *supra*, § 37.43. "If the defendant failed to pay, his equity of redemption in the mortgaged premises was absolutely foreclosed and he was debarred from all rights." *Id*. Indiana recognizes strict foreclosure under limited circumstances, "where a foreclosure action has proceeded to conclusion and it is then discovered that a junior lienor has been omitted from the action, strict foreclosure is a normal method open to the purchaser to clear title." *Id*. In a strict foreclosure action, "The prayer for relief does not include a request for a deficiency judgment since the mortgagee is seeking to perfect his title rather than apply security to a debt." *Id*. Strict foreclosure has acknowledged usefulness "[a]s an ancillary device to extinguish an overlooked subordinate claim." *Id*.

[35] In *Citizens*, our Supreme Court applied the merger doctrine to the interests that existed in land that had been foreclosed upon and purchased by a mortgagee, the result of which was that the mortgagee had no seniority over a junior lienholder erroneously omitted from the foreclosure proceedings.

[36] In the legislative session immediately following the *Citizens* decision, the General Assembly enacted I.C. § 32-29-8-4, *declaring an emergency to allow the*

*statute to become effective upon passage.* [19] This statute effectively "eliminated the doctrine of merger from Indiana foreclosure law and statutorily reinstated the strict foreclosure remedy to resolve claims of omitted parties following mortgage foreclosures." Rory O'Bryan, *Legislative Preemption of Merger*, Prob. & Prop., May/June 2013 44, 45. I.C. § 32-29-8-4 defined the terms "interested person" and "omitted party" in the context of a foreclosure suit, and laid out the steps whereby either could file an action to determine the extent of an omitted party's interest and terminate that interest subject to the right of the omitted party to redeem the property on terms as the court considers equitable under the circumstances.

[37] I.C. § 32-29-8-4 provides that an "interested person," like NCM, U.S. Bank, or Briones, or an "omitted party," like German American or Bank of Evansville, can bring a civil action, "at any time after a judgment and decree of sale is entered in an action to foreclose a mortgage," to determine the extent of and terminate the interest of an omitted party in the property subject to the sale. I.C. § 32-29-8-4(c). The court is then charged with determining the extent of the omitted party's interest in the property, and "issue a decree terminating that interest, subject to the right of the omitted party to redeem the property on terms as the court considers equitable under the circumstances." I.C. § 32-29-8-4(d). If the court determines that the omitted party is entitled to redemption,

---

[19] We note that the Indiana General Assembly adjourns in the spring of each year and does not go into full session until January of the following year. Therefore, absent calling a special session, March 2012 was, likely, the soonest the legislature could have responded to the *Citizens* decision.

and after considering certain statutory factors, "the court shall grant redemption rights to the omitted party that the court considers equitable under the circumstances." I.C. § 32-29-8-4(g).

[38] The purpose of the statute is set forth in section (h), which provides:

> (h) The senior lien upon which the foreclosure action was based is not extinguished by merger with the title to the property conveyed to a purchaser through a sheriff's deed executed and delivered under IC 32-29-7-10 until the interest of any omitted party has been terminated:
>
> > (1) through an action brought under this section; or
> >
> > (2) by operation of law.
>
> Until an omitted party's interest is terminated as described in this subsection, any owner of the property as a holder of a sheriff's deed executed and delivered under IC 32-29-7-10, or any person claiming by, through, or under such an owner, is the equitable owner of the senior lien upon which the foreclosure action was based and has all rights against an omitted party as existed before the judicial sale.

I.C. § 32-29-8-4(h).

[39] Appellants contend that the trial court erred when it applied the common law merger principles of *Citizens*, instead of applying I.C. § 32-29-8-4. We agree.

[40] We reject German American's argument that U.S. Bank's interests were extinguished by operation of law in 2009. Even under the reasoning of *Citizens*, merger was not automatic. NCM filed its motion for strict foreclosure in January 2010, and that motion was consolidated into the instant action in May 2010. Applying *Citizens'* rationale, the motion for strict foreclosure would have acted "merely as a mechanism to place before the court the *question of whether*

*the doctrine of merger should be enforced.*" *Citizens*, 949 N.E.2d at 1200 (emphasis added).

[41] Here, the doctrines of merger and strict foreclosure were of no import until the parties questioned the priority of their interests in the Property. German American did not file its motion to set aside the default judgment until November 2009, and the default judgment was not set aside until December 2009. The question of priority did not arise until NCM filed its motion for strict foreclosure in January 2010; it was at that time that the doctrines of merger and strict foreclosure became issues. It would be another three years, in 2013 when this case was decided, before the trial court would have to determine whether merger had occurred.

[42] German American contends the application of I.C. § 32-29-8-4 to this case would be improper as retroactive. "Statutes are disfavored as retroactive when their application 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)). "Accordingly, it has become 'a rule of general application' that 'a statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication.'" *Id.*; *see also Moore v. State*, 30 N.E.3d 1241, 1248 (Ind. Ct. App. 2015) ("A general rule of statutory construction is that, unless there are strong and compelling reasons, statutes will not be applied retroactively.").

"[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf*, 511 U.S. at 265. "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id*. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal." *Id*. (internal quotation marks omitted).

That being said, "[a]lthough court opinions often designate statutes as either prospective or retrospective, the statutes in fact are often not susceptible to such clear characterization." 2 Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* 383-85 (7th ed. 2009). "Many statutes are both prospective and retrospective. *Id*. at 385. "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." *Landgraf*, 511 U.S. at 269 (citation omitted). "The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.'" *Martin v. Hadix*, 527 U.S. 343, 357-58 (1999) (citing *Landgraf*, 511 U.S. at 270). "This judgment should be informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Id*. (quoting *Landgraf*, 511 U.S. at 270).

[45]     In *Landgraf*, the United States Supreme Court offered,

> When a case implicates a federal statute enacted after the events in
> suit, the court's first task is to determine whether Congress has
> expressly prescribed the statute's proper reach. If Congress has done
> so, of course, there is no need to resort to judicial default rules. When,
> however, the statute contains no such express command, the court
> must determine whether the new statute would have retroactive effect,
> *i.e.*, whether it would impair rights a party possessed when he acted,
> increase a party's liability for past conduct, or impose new duties with
> respect to transactions already completed. If the statute would operate
> retroactively, our traditional presumption teaches that it does not
> govern absent clear congressional intent favoring such a result.

511 U.S. at 280. Although the *Landgraf* Court was addressing a federal statute,

we find this procedure provides guidance regarding the application of I.C. § 32-

29-8-4 under the facts of this case.

[46]     The Indiana General Assembly in adopting I.C. § 32-29-8-4 provided evidence

as to its scope. The language of subsection (c), a section that effectively codified

a form of strict foreclosure, provides, "*At any time* after a judgment and decree

of sale is entered in an action to foreclose a mortgage on an interest in real

property in Indiana, an interested person or an omitted party may bring a civil

action to: (1) determine the extent of; and (2) terminate the interest of; an

omitted party in the property subject to the sale." I.C. § 32-29-8-4(c) (emphasis

added). The plain meaning of the "strict foreclosure" language shows that I.C.

§ 32-29-8-4 can be applied *any time after* a judgment and decree of sale is

entered. I.C. § 32-29-8-4.

[47]     The Millers obtained a $25,000 line of credit from German American on

November 17, 2006, and executed a mortgage in favor of German American to

secure that loan. Prior to making that loan, German American should have engaged in due diligence. A review of the Warrick County Recorder records would have uncovered the existence of U.S. Bank's mortgage, which was recorded on October 19, 2006 (Instrument No. 2006R-012338), as a first priority lien. *Briones's App.* at 95-96; *Appellee's App.* 189. The mortgage reflected that just one month prior, the Millers had borrowed almost $775,000 from U.S. Bank to finance the purchase of the Property. *Appellee's App.* at 189-90. In other words, the Property, which was the collateral German American accepted in exchange for granting the loan, already had a first priority lien against it securing U.S. Bank's loan, which was about thirty times larger than the line of credit that German American extended to the Millers.

[48] The concepts of merger and strict foreclosure were in existence at the time the Millers borrowed money from both U.S. Bank and German American, and German American's interests would not have been substantively changed by a shift in those concepts during the pendency of the case. Considerations of the doctrines of merger and strict foreclosure played no part in the expectations that German American had when it granted the Millers their loan.

[49] The application of I.C. § 32-29-8-4 to the instant facts will not impair any rights German American had when it acted, will not increase German American's liability for past conduct, and will not impose new duties on German American with respect to completed transactions. Accordingly, the application of I.C. § 32-29-8-4 to the facts of this case does not act as a retroactive application. In

fact, the application of this statute will return German American to the position that it knew it occupied—that of a junior lienholder.

[50] Pursuant to I.C. § 32-29-8-4, German American is not entitled to the priority lien it obtained from the trial court. This application of this statute is what our legislature intended and is consistent with an equitable result.[20]

[51] The language of I.C. § 32-29-8-4 sets forth the specific procedure that an interested party or an omitted party must take regarding determining and terminating the interest of an omitted party. We remand this case to the trial court with instructions that the court treat the motion for strict foreclosure as a motion filed pursuant to I.C. § 32-29-8-4 and, thereafter, apply that section to resolve German American's interest as an omitted party.

[52] We affirm the trial court's decision to set aside German American's default judgment, we reverse the trial court's grant of summary judgment in favor of German American, and we remand to the trial court to decide this case pursuant to I.C. § 32-29-8-4

[53] Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Bradford, J., concur.

---

[20] Indeed, in its Partial Judgment, the trial court made the same observation, noting that its judgment "seems to result in an inequitable and unjust result." *Briones's App.* at 167.